YETZKE v FAUSAK

Docket No. 135735. Submitted May 6, 1992, at Grand Rapids. Decided June 1, 1992, at 9:00 A.M. Leave to appeal sought.

Sharlene Yetzke, for herself and as conservator of the estate of Patrick A. Yetzke, a legally incapacitated person, and others brought an action in the Berrien Circuit Court against Larry A. Fausak, Albert W. Shafer, and the Michigan Property & Casualty Guaranty Association, a statutorily mandated association whose purpose is to protect the public against financial losses to policyholders or claimants due to the insolvency of insurers, to recover damages for personal injuries suffered by Patrick Yetzke as the result of an automobile accident involving Larry Fausak after Fausak allegedly had been served alcohol in Shafer's bar while visibly intoxicated. Michigan Property & Casualty was added as a defendant because Fausak's liability insurer, Cadillac Insurance Company, was ordered liquidated by the Ingham Circuit Court, Carolyn Stell, J., following the accident. The value of the claim for Yetzke's injuries exceeded the amount of a settlement between the plaintiffs and Shafer and the amount Patrick Yetzke received from his no-fault insurer, Wolverine Mutual Insurance Company, for uninsured motorist coverage. The plaintiffs argued that Michigan Property & Casualty was liable to pay the entire limit of Fausak's policy with Cadillac as underinsured motorist coverage. Michigan Property & Casualty argued that, pursuant to MCL 500.7931(3); MSA 24.17931(3), the payment from Wolverine was a credit against, and exceeded, its liability under the Cadillac policy. The court, John T. Hammond, J., agreed and granted summary disposition for Michigan Property & Casualty. The plaintiffs appealed.

The Court of Appeals *held:*

The trial court properly granted summary disposition.

1. MCL 500.7925(4); MSA 24.17925(4) provides that Michigan

REFERENCES

Am Jur 2d, Insurance § 103.

See the Index to Annotations under Insurance and Insurance Companies.

Property & Casualty's liability cannot exceed the applicable limit of the insolvent insurer's policy.

2. MCL 500.7931; MSA 24.17931 clearly and unambiguously provides for a setoff from a covered claim. Pursuant to MCL 500.7925(4); MSA 24.17925(4), a covered claim is limited to the maximum amount of liability provided by the insolvent insurer's policy.

3. The plaintiffs' policy issued by Wolverine provides that under the circumstances of this case coverage is available for uninsured motorists, but not for underinsured motorists.

4. The setoff provision of MCL 500.7931(3); MSA 24.17931(3), which states that coverage available under another, valid policy must be exhausted before Michigan Property & Casualty will become liable, is a reasonable limit upon Michigan Property & Casualty's liability as intended by the Legislature.

Affirmed.

INSURANCE — PROPERTY AND CASUALTY GUARANTY ASSOCIATION — INSOLVENT INSURERS — COVERED CLAIMS — CREDIT FOR COVERED CLAIMS.

The Michigan Property and Casualty Guaranty Association has a statutory duty to pay the obligations of insolvent insurers where those obligations constitute "covered claims" as defined by the Property and Casualty Guaranty Association Act; the liability of the association is limited to the amount of the insolvent insurer's policy, and any damages or benefits recoverable from another insurance policy or fund are to be set off against the amount owed by the association (MCL 500.7901 *et seq.*; MSA 24.17901 *et seq.*).

*John D. Tallman,* for the plaintiffs.

*Dykema Gossett* (by *Donald S. Young, Suzanne Sahakian,* and *Maria Del Monaco*), for Michigan Property & Casualty Guaranty Association.

Before: HOOD, P.J., and CONNOR and R. C. KAUFMAN,* JJ.

PER CURIAM. Plaintiffs have appealed as of right from the trial court's final order of November 19, 1990, following a motion for declaratory relief that

* Circuit judge, sitting on the Court of Appeals by assignment.

was treated as a motion for, and summary disposition granted, for defendant Michigan Property & Casualty Guaranty Association with respect to the extent of its liability in this case. We affirm.

Plaintiffs instituted this action to recover damages for personal injuries Patrick Yetzke suffered in an automobile accident with defendant Larry Fausak. It was alleged that Fausak was drunk, and plaintiffs claimed that defendant The Welcome Inn had served Fausak alcohol while he was visibly intoxicated. Plaintiffs therefore also alleged a dramshop action against defendant Albert Shafer, doing business as The Welcome Inn.

In January 1990, Fausak's liability insurer, Cadillac Insurance Company, was placed into liquidation by court order. After a required stay lapsed, the Michigan Property & Casualty Guaranty Association (MPCGA) was added as a defendant in place of Fausak's insolvent insurer so that the MPCGA's liability could be determined. At the time the MPCGA was joined in this action, all claims between the various parties had been settled. However, a question remained with regard to the MPCGA's liability. Plaintiffs conceded that for all practical purposes Fausak was uncollectible except to the extent that there was any coverage available through the MPCGA. Therefore, the parties agreed that this case could be finally resolved through a motion for declaratory relief. This matter was treated as a motion for summary disposition alleging no genuine issue of material fact, MCR 2.116(C)(10).

The parties stipulated the relevant facts for a decision in this case. For the injuries to Patrick Yetzke, a settlement was reached against Shafer for $98,000. Under Patrick Yetzke's no-fault insurance policy with Wolverine Mutual Insurance Company, he received an additional $25,000 for

uninsured motorist coverage. The limits of coverage under Fausak's policy with Cadillac was $20,000. The value of the claim on behalf of Patrick Yetzke was in excess of $143,000, or beyond the amounts of the settlement and the coverage available.

In the trial court, plaintiffs argued that the MPCGA was liable for $20,000, the amount of Fausak's policy with Cadillac, regardless of the fact that Wolverine had paid $25,000 of uninsured motorist coverage to plaintiffs, because plaintiffs would have been entitled to that coverage, as underinsured motorist coverage, even if Cadillac were not insolvent.

The MPCGA argued that the payment of $25,000 was a credit against its liability in place of Cadillac pursuant to MCL 500.7931(3); MSA 24.17931(3). The trial court agreed with the MPCGA and ruled that it owed nothing because the amount of the credit, $25,000, exceeded the amount of the covered claim, $20,000. The court held that the MPCGA had no liability for the covered claim in this case once a deduction was made for the setoff from other insurance available to plaintiffs. The court agreed with the MPCGA that the insurance coverage available to plaintiffs through the uninsured motorist coverage with Wolverine was a direct setoff with regard to the MPCGA's liability in place of Cadillac Insurance. Therefore, the court held that, under MCL 500.7931(3); MSA 24.17931(3), the MPCGA had no liability because the setoff exceeded the limits of Cadillac's policy.

The only issue presented for decision on appeal is whether, under the Property and Casualty Guaranty Association Act, MCL 500.7901 et seq.; MSA 24.17901 et seq., the trial court correctly determined the amount of the MPCGA's liability after the setoff was subtracted.

The purpose of the Property and Casualty Guaranty Association Act is to protect the public against financial losses to either policyholders or claimants due to the insolvency of insurers. *Satellite Bowl, Inc v Michigan Property & Casualty Guaranty Ass'n*, 165 Mich App 768, 771; 419 NW2d 460 (1988). The act accomplishes this purpose by imposing a statutory duty on the MPCGA to pay the obligations of insolvent insurers that constitute "covered claims" as defined by MCL 500.7925; MSA 24.17925. *Felsner v McDonald Rent-A-Car, Inc*, 173 Mich App 518, 521; 434 NW2d 178 (1988); MCL 500.7931(1); MSA 24.17931(1).

The obligation to pay covered claims is expressed in MCL 500.7931(1); MSA 24.17931(1). *Metry, Metry, Sanom & Ashare v Michigan Property & Casualty Guaranty Ass'n*, 403 Mich 117, 120; 267 NW2d 695 (1978). That statute also provides, at MCL 500.7931(3); MSA 24.17931(3), that the MPCGA is entitled to a credit against a covered claim:

> *If damages or benefits are recoverable by a claimant or insured under an insurance policy other than a policy of the insolvent insurer, or from the motor vehicle accident claims fund, or a similar fund, the damages or benefits recoverable shall be a credit against a covered claim payable under this chapter.* If damages against an insured who is not a resident of this state are recoverable by a claimant who is a resident of this state, in whole or in part, from any insolvency fund or its equivalent in the state where the insured is a resident, the damages recoverable shall be a credit against a covered claim payable under this chapter. An insurer or a fund may not maintain an action against an insured of the insolvent insurer to recover an amount which constitutes a credit against a covered claim under this section. An

amount paid to a claimant in excess of the amount authorized by this section may be recovered by an action brought by the association. [Emphasis added.]

MCL 500.7925; MSA 24.17925 defines "covered claim" in relevant part as follows:

(1) "Covered claims" means obligations of an insolvent insurer which meet all of the following requirements:

(a) Arise out of the insurance policy contracts of the insolvent insurer issued to residents of this state or are payable to residents of this state on behalf of insureds of the insolvent insurer.

(b) Were unpaid by the insolvent insurer.

(c) Are presented as a claim to the receiver in this state or the association on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings.

(d) Were incurred or existed before, at the time of, or within 30 days after the date the receiver was appointed.

(e) Arise out of policy contracts of the insolvent insurer issued for all kinds of insurance except life and disability insurance.

(f) Arise out of insurance policy contracts issued on or before the last date on which the insolvent insurer was a member insurer.

\* \* \*

(4) Covered claims shall not include any portion of a claim which is in excess of an applicable limit provided in the insurance policy.

If the plaintiffs' case against Fausak is treated as a covered claim, the extent of the MPCGA's liability is limited by MCL 500.7925(4); MSA 24.17925(4); in other words, the MPCGA's liability cannot exceed the applicable limit of the Cadillac insurance policy, which was $20,000.

The parties do not agree how the setoff should

be determined. The MPCGA argues that it has no liability in this case because its limit of liability is $20,000, and it is entitled to a setoff of $25,000 paid by Wolverine for the uninsured motorist coverage. Plaintiffs, however, argue that, rather than being against the amount of Cadillac's policy, the setoff should be against the entire amount of the underlying claim for personal injuries, which is in excess of $143,000 in this case.

We believe, under the clear and unambiguous language of MCL 500.7931; MSA 24.17931, that a setoff is to be deducted from a covered claim. As a covered claim is defined in MCL 500.7925; MSA 24.17925, it is limited in meaning to the insolvent insurer's policy of insurance. The maximum amount of liability is defined at MCL 500.7925(4); MSA 24.17925(4), again based on the insolvent insurer's policy limits rather than the extent of the underlying injuries of the claimant. Accordingly, the trial court correctly read MCL 500.7925; MSA 24.17925 and MCL 500.7931(3); MSA 24.17931(3) together. The extent of the MPCGA's liability is $20,000.

Plaintiffs argue that because the purpose of the Property and Casualty Guaranty Association Act is to place claimants in the same position they would have occupied if there had been a valid policy of insurance, they should have received the $25,000 payment from Wolverine for underinsured motorist coverage, in addition to the $20,000 provided by the policy Fausak had. Plaintiffs' policy of insurance states that it does not provide coverage for underinsured motorists where there was a policy in existence, but the insurer is insolvent:

However, "underinsured motor vehicle" does not include any vehicle or equipment:

\* \* \*

8. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company;
   a. denies coverage; or
   b. is or becomes insolvent.

Plaintiffs' policy did provide coverage in this case for an uninsured motorist:

"Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

\* \* \*

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. denies coverage; or
   b. is or becomes insolvent.

Under plaintiffs' policy of insurance, it is clear that the situation in this case is covered by uninsured motorist coverage rather than underinsured motorist coverage. However, this still does not resolve the issue at hand where we are asked to interpret MCL 500.7931(3); MSA 24.17931(3) as if the Cadillac policy was simply replaced by coverage through the MPCGA.

In order to resolve this question, we must resort to the rules of statutory interpretation. Laws that involve the insurance business are "affected with a public interest," and therefore must "be liberally construed in favor of policyholders, creditors, and the general public." *Allen v Michigan Property & Casualty Guaranty Ass'n,* 129 Mich App 271, 274; 341 NW2d 500 (1983). The language should be construed in the most beneficial way to prevent absurdity, hardship, or injustice, to favor public convenience, and to oppose all prejudice to public interests. *Id.* Moreover, the statute should be given a reasonable construction considering its purpose

and the object it seeks to accomplish. *Attorney General ex rel Ins Comm'r v Michigan Property & Casualty Guaranty Ass'n,* 80 Mich App 653, 657-658; 263 NW2d 918 (1978).

We believe that plaintiffs' argument regarding the intent of the Legislature in enacting the Property and Casualty Guaranty Association Act is erroneous.[1] Plaintiffs mistakenly maintain that the purpose of the act is for the MPCGA to step into the shoes of insolvent insurers. To the contrary, the purpose is to protect those persons who have a right to rely on the existence of an insurance policy, who otherwise would be rendered helpless because of an insurer's insolvency. *Metry, Metry, supra,* p 121; *Allen, supra,* p 274. Although the statutory scheme created by the Legislature is intended to provide some coverage where a preexisting policy becomes invalid, the setoff provision of MCL 500.7931(3); MSA 24.17931(3) clearly states that if coverage is available under another, valid policy, that coverage must be exhausted before the MPCGA becomes involved. We believe this is a reasonable limit upon the MPCGA's liability intended by the Legislature and is consistent with the purpose of the act. See *Monical Machinery Co v Michigan Property & Casualty Guaranty Ass'n,* 189 Mich App 694, 699; 473 NW2d 808 (1991). Moreover, under plaintiffs' own no-fault policy, it is clear that in the event there was an insolvent insurer involved, coverage was available for unin-

---

[1] To support their position, plaintiffs quote from *Borman's, Inc v Michigan Property & Casualty Guaranty Ass'n,* 717 F Supp 468, 469 (ED Mich, 1989), rev'd 925 F2d 160 (CA 6, 1991), that "the Association steps into the insurer's shoes" when an insurer becomes insolvent. We believe this quote has been misconstrued by plaintiffs as representing the intent of the Legislature. Judge Hackett in her opinion in *Borman's* even noted this. See *Borman's, supra,* p 477, n 3 (citing *Metry, Metry, supra,* for the purpose of the Property and Casualty Guaranty Association Act). The MPCGA does not replace an insolvent insurer unless the provisions of the act are first complied with.

sured motorists but not for underinsured motorists. Consequently, plaintiffs cannot logically maintain that they believed that their own policy arguably supported both a payment on behalf of Fausak by the MPCGA as well as full coverage for an underinsured motorist if that motorist's insurer was insolvent.[2] In fact, the extra $5,000 plaintiffs received beyond the limits of Fausak's policy of $20,000, indicates that plaintiffs were provided with some underinsured motorist coverage, but only in the amount of coverage plaintiffs had that exceeded the amount of Fausak's former coverage.

The trial court properly granted summary disposition in this case under MCR 2.116(C)(10), on the basis of a finding of no genuine issue of material fact. *Alyas v Gillard,* 180 Mich App 154, 158; 446 NW2d 610 (1989).

Affirmed.

---

[2] We likewise distinguish *Michigan Mutual Liability Co v Karsten,* 13 Mich App 46; 163 NW2d 670 (1968), upon which plaintiffs rely. That decision did not involve MCL 500.7931; MSA 24.17931, but rather the construction of an insurance policy.