**UNITED STATES of America, Plaintiff,**

v.

**RUTLAND, INC., d/b/a Maaco Auto Painting & Body Works, Defendant,**

**Georgia Insurer's Insolvency Pool, Intervening Defendant.**

**Civ. A. No. CV 493–109.**

United States District Court,
S.D. Georgia,
Savannah Division.

April 13, 1994.

Lawrence B. Lee, Savannah, GA, for U.S.

Edward M. Hughes, Savannah, GA, for Rutland, Inc.

Wilbur C. Brooks, James T. Budd, Chambers, Mabry, McClelland & Brooks, Atlanta, GA, for Georgia Insurers Insolvency Pool.

## ORDER

EDENFIELD, Chief Judge.

Before the Court are the Plaintiff's, the Defendant's and the Intervening Defendant's motions for summary judgment and the Intervening Defendant's motion for a declaratory judgment. For the reasons set forth herein, the Plaintiff's motion for partial summary judgment is **GRANTED** and the Defendant's and Intervening Defendant's motions for summary judgment are **DENIED.**

## BACKGROUND

The essential facts of this case are not in dispute. In 1989, the United States of America ("USA") entered into a contract with Rutland, Inc., d/b/a Maaco Auto Painting and Body Works ("Rutland") under which Rutland was to paint certain Air National Guard vehicles. On or about June 10, 1990, an Air National Guard vehicle that had been delivered to Rutland for painting was stolen from Rutland's property and subsequently wrecked and destroyed. USA brought this negligent bailment action against Rutland claiming that Rutland failed to adequately secure the vehicle in question and seeking $44,681.00 in damages.

At the time of the alleged incident, Rutland was insured by First Southern Insurance Company, a Florida corporation that was declared insolvent subsequent to the loss in question, but before this action was filed. As a result of that insolvency, the Georgia Insurer's Insolvency Pool ("GIIP") took up Rutland's defense under a reservation of rights.

On October 26, 1993, Magistrate Judge G.R. Smith entered an Order allowing GIIP to intervene as a Defendant in this action, and on November 24, 1993, GIIP filed a counterclaim and a cross-claim against the respective Parties for a declaratory judgment on their rights and liabilities under the Georgia Insurer's Insolvency Pool Act, O.C.G.A. §§ 33–36–1, et seq. (1990) ("Act"). All three of the Parties have moved for summary judgment.

## ANALYSIS

### I. Summary Judgment

■ The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56 advisory committee's note). The Court's analysis ends "where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law." *Great Lakes Dredge & Dock Co. v. Miller,* 957 F.2d 1575, 1578 (11th Cir.), *cert denied, Chevron Transport Corp. v. Great Lakes Dredge and Dock Co.,* — U.S. —, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992); *Real Estate Fin. v. Resolution Trust Corp.,* 950 F.2d 1540, 1543 (11th Cir.1992) (both citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Thus, summary judgment is appropriate where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.,* 932 F.2d 1384, 1387–88 (11th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991). The substantive law governing the action determines whether an element is essential. *E.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1505 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).

A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. "Factual disputes that are irrelevant or unnecessary will not be counted." *United States v. Gilbert,* 920 F.2d 878, 883 (11th Cir.1991) (citation omitted); *see Useden v. Acker,* 947 F.2d 1563, 1575 (11th Cir.1991), *cert. denied, Useden v. Greenberg, Traurig, Hoffman, Lipoff, Rosen, & Quentel,*

—— U.S. ——, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993).

■ In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party, *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992); *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir.1991), and must avoid weighing conflicting evidence, *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *Ryder*, 943 F.2d at 1523; *Brown v. Hughes*, 894 F.2d 1533, 1536 (11th Cir.), *cert. denied*, 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986), or making credibility determinations. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir.1987).

## II. Rights and Liabilities of the Parties Under the Act

The material facts of this case not being in dispute, the present motions call for the Court to define the rights and obligations of the Parties under the Georgia Insurer's Insolvency Act. The Georgia Insurer's Insolvency Act is designed "to provide a remedy for *covered claims* under property and casualty insurance policies when the insurer has become insolvent and is unable to perform its contractual obligations." O.C.G.A. § 33–36–2 (1990) (emphasis added).

"Covered claims" are defined as claims that "arise out of" an insurance policy issued by a state-authorized insurer that fall within at least one of the classes of claims set forth in O.C.G.A. § 33–36–3(2)(B) (1990). These classes include claims "of a policyholder or insured who at the time of the insured event was a resident of this state," O.C.G.A. § 33–36–3(2)(B)(iii), and claims "of a person having an insurable interest in or related to property which was permanently situated in this state," O.C.G.A. § 33–36–3(2)(B)(iv). However, "[a] covered claim shall not include any obligation to insurers, insurance pools, underwriting associations, or any person which has a net worth greater than $3 million at the time of the insured event," O.C.G.A. § 33–36–3(F) (1990), and "shall not include any claim or judgment for punitive damages and attorney's fees," O.C.G.A. § 33–36–3(G) (1990).

In this case, USA alleges that Rutland was negligent in failing to properly secure a vehicle that USA had entrusted to Rutland for painting and corrosion control. Because Rutland's insurance carrier became insolvent prior to the filing of this action, GIIP assumed Rutland's defense and subsequently intervened as a defendant. GIIP asserts that USA is a "person which had a net worth greater than $3 million at the time of the insured event" and that GIIP is therefore not liable under the Act. GIIP and Rutland further assert that since Rutland was properly insured for losses of the type in question, and since GIIP is not liable under the Act, Rutland should not be penalized for the insolvency of their insurance company. In other words, they contend, the Act should be read to absolve Rutland of liability in the particular circumstances of this case. USA responds that Rutland's liability is not contingent upon its insurance coverage, regardless of the fact that GIIP has taken up Rutland's defense. Furthermore, USA asserts that GIIP's obligation to Rutland is one of indemnity and, thus, does not arise until and unless USA recovers a judgment against Rutland. In any event, USA maintains that its action is against Rutland, not GIIP, that this action is not substantively barred by the fact that USA has a net worth in excess of $3 million, and that if USA prevails and Rutland makes a claim against GIIP for reimbursement, Rutland's, and not USA's, net worth would be determinative of GIIP's obligations to pay.

Thus, the Court must analyze several issues: (1) is USA, for the purpose of this action, a "person which has a net worth greater than $3 million at the time of the insured event;" (2) if so, can Rutland nonetheless be held liable for USA's loss; and, (3) if so, can GIIP then be held liable to indemnify Rutland in the event that a judgment is returned against Rutland and in favor of USA.

### 1. USA's Status Under the Act

■ In its motion for summary and declaratory judgment, GIIP asserts that USA's claim is not a "covered claim" because USA is a "person which has a net worth greater than $3 million at the time of the insured event." O.C.G.A. § 33–36–3(F). The Court has taken judicial notice of the fact that USA's net worth exceeded $3 million at the time of the insured event. (Minute Order, Dec. 13, 1994.) Thus, the Court must now determine whether USA is a "person" under the Act.

Georgia insurance law defines "person" as follows:

> "person" means an "individual, insurer, company, association, trade association, organization, society, reciprocal or interinsurance exchange, partnership, syndicate, business trust, corporation, Lloyd's association, and associations, groups, or department of underwriters, and *any other legal entity*."

O.G.C.A. § 33–1–2(5) (1992) (emphasis added); *Georgia Insurer's Insolvency Pool v. Elbert County*, 258 Ga. 317, 318, 368 S.E.2d 500 (1988). The term "legal entity" is not defined in the insurance code, but the Georgia Supreme Court has defined it as "an entity, other than a natural person, who has sufficient existence in legal contemplation that it can function legally, be sued or sue, and make decisions through agents as in the case of corporations." *Elbert County*, 258 Ga. at 318, 368 S.E.2d 500 (quoting BLACK'S LAW DICTIONARY (5th Ed.1979)). Applying the above definitions, the Georgia Supreme Court held that a county government was a "person" under Georgia insurance law. *Id.* The same characteristics that made a county government qualify as a "person" under the Act are attributable to the United States government. Clearly, the United States is "an entity, other than a natural person, who has sufficient existence in legal contemplation that it can function legally, be sued or sue, and make decisions through agents as in the case of corporations." Therefore, the Court concludes that USA is a "person" under the Act.

### 2. Rutland's Liability

In their respective motions for summary judgment, GIIP and Rutland contend that even if a judgment were returned against Rutland it would be uncollectible because a judgment against Rutland in this case would essentially be a judgment against GIIP, and since USA has a net worth in excess of $3 million, GIIP cannot be held liable under the Act. USA responds that its claim is against Rutland, not GIIP, and that Rutland's liability is not contingent upon its insurance coverage or coverage under the Act. Thus, USA contends that even if GIIP has a defense based on USA's net worth, a fact that USA vehemently contests, that defense cannot be asserted to bar USA's tort claim against Rutland.

The issue, therefore, defines itself as whether Rutland, an insured corporation whose insurer has been declared insolvent and whose defense is being maintained by GIIP, can assert as a defense, the limitation on GIIP liability created by the Act against claimants which have net worths in excess of $3 million. If Rutland can assert the defense, then the Act essentially creates a substantive bar to USA's action. If, however, Rutland cannot assert the defense, then this case must proceed to trial.

■ The Act does not explicitly address this issue. Yet, the purpose of the Act is to "provide a remedy for covered claims under property and casualty insurance policies when the insurer has become insolvent and is unable to perform its contractual obligations." O.C.G.A. § 33–36–2; *see also*, O.C.G.A. § 33–36–3(2)(i). Moreover, "every insurer authorized to write property or casualty insurance policies in this state shall be members of the insolvency pool," O.C.G.A. § 33–36–5, and:

> in the event an insurer is determined to be insolvent, the coverage afforded by property and casualty insurance policies issued by such insurer shall, with respect to covered claims, become the obligation of the pool. . . . The pool shall be deemed to be the insurer for such period with respect and to the extent of the claims with all the rights, duties, and obligations of the insolvent insurer . . . .

O.C.G.A. § 33–36–9. From these provisions it is clear that in situations where an insurer becomes insolvent, the Act requires GIIP to fulfill the insurer's obligations to the insured.

 These obligations, however, are not unlimited. They are defined by the insurance contract between the insured and its now insolvent insurer, *e.g., Colwell v. Voyager Cas. Ins. Co.,* 184 Ga.App. 842, 363 S.E.2d 310 (1987), and they are further limited by operation of the Act, *e.g.,* O.C.G.A. § 33–36–3; *Claxton Mfg. Co. v. Hodges,* 201 Ga.App. 371, 372, 411 S.E.2d 109 (1991). In other words, GIIP stands in the shoes of the insolvent insurer to the extent of the insurance contract and the limitations of the Act.

 While this does not directly address the issue at bar, it is significant because it equates the role of GIIP to the role that would otherwise be played by defendant's insurance company if that company were not insolvent (subject, of course to the limitations contained in the Act). From this role definition, it is reasonable to presume that GIIP's relationship to its insured and other claimants is similar (although perhaps not identical) to that of regular insurance companies. It is axiomatic that under normal circumstances, a defendant's tort liability is not contingent upon its insurance coverage. Indeed, insurance is a non-issue. Thus, if, for whatever reason, a defendant's insurance company has a contractual defense that would absolve it from having to pay a particular judgment, that defendant cannot assert the defense as a substantive bar to the tort action against it. Moreover, in the event that a judgment is entered against a defendant, the fact that the defendant's insurer has a contractual defense that absolves it of liability does not absolve the defendant of its liability to the plaintiff.

 Applying these principles to the facts of this case, regardless of whether GIIP has a statutory defense that would absolve it of liability in the event that a judgment is returned against Rutland, Rutland cannot assert that defense to create a substantive bar to USA's action. Furthermore, in the event that a judgment is returned against Rutland, Rutland's obligation to pay the judgment is not contingent on GIIP's obligation to reimburse Rutland.

Rutland and GIIP argue that Rutland had appropriate insurance at the time of the loss and that Rutland should therefore not be penalized as a result of the insolvency of its insurer and the limitation imposed on its protection by the Georgia legislature. (Br. at 2.) Furthermore, Rutland submits:

> the intention of the legislature was to protect policyholders from a claimant with significant financial resources.... Rutland and any policyholder should be protected from uninsured exposure as a result of circumstances beyond its control and.... [T]he legislature determined that a person with significant financial resources would best be able to bear the loss under such circumstances. The legislature struck a reasonable balance of the rights of the parties considering the extent of a potential claimant's financial worth, the size of the loss in question and the extent of a defendant's potential liability.

(Br. at 2–3.)

Neither Rutland, nor GIIP, have cited the court to any cases that support their position. The two cases on point, while far from clear, tend to support USA's position. In *Claxton Mfg. Co. v. Hodges,* 201 Ga.App. 371, 411 S.E.2d 109 (1991), a claimant recovered a disability award and attorney fees against her employer and its insurance company. Two years later, the insurance company became insolvent and GIIP began paying the disability payments, but not the attorney fee payments. Following a hearing to determine change of condition, an ALJ ordered the employer to recommence paying the attorney fees that were being paid by the insolvent insurance company before it became insolvent. On appeal, the Georgia Court of Appeals held that although the insurer was insolvent and the attorney fees award was not a covered claim under the Act, "we cannot conclude that the employer's responsibility to pay the award is thereby extinguished." *Id.,* 201 Ga.App. at 372, 411 S.E.2d 109. While in that case the original judgment was against both the employer and its insurer, that distinction did not appear to drive the court's reasoning. *Claxton,* therefore, sup-

ports the position that the Act's exclusion of certain claims from coverage does not create a substantive bar to actions against the insured for recovery of those uncovered claims.

■ In *Lee v. Fulton Concrete Company,* 195 Ga.App. 348, 393 S.E.2d 449 (1990), plaintiff was injured when her vehicle was struck by a truck that was owned and operated by the defendant. After the accident, the defendant's liability insurer became insolvent. The plaintiff filed an action and caused a copy to be served upon her uninsured motorist carrier. Ultimately, the plaintiff settled with her uninsured motorist carrier for less than policy limits. The defendants moved for summary judgment alleging that the plaintiff's settlement with her uninsured motorist carrier for less than policy limits barred her from pursuing her tort claim against the defendants because the Act requires claimants to exhaust their rights under their insurance policy before any recovery can be obtained from the pool. *Id.,* 195 Ga.App. at 348, 393 S.E.2d 449 (relying on former O.C.G.A. Section 33–36–14(a)). The trial court granted summary judgment. On appeal, the Georgia Court of Appeals reversed and held:

> We need not decide whether appellant's apparently good faith settlement with her own uninsured motorist carrier for less than the policy limits does or does not evince a failure to "exhaust" her rights under her own policy as contemplated by former O.C.G.A. § 33–36–14(a). Regardless of the legal effect that appellant's settlement might otherwise have under the Georgia Insurer's Insolvency Pool Act, that settlement does not provide appellees with a personal defense so as to bar appellant's pursuit of her tort action against them.

*Id.,* 195 Ga.App. at 348–49, 393 S.E.2d 449 (citing *Bethea v. Forbes,* 519 Pa. 422, 548 A.2d 1215 (1988)). While *Lee* is distinguishable from the present case, it illustrates that the mere fact that one of the prerequisites to recovery under the Act is not satisfied does not create a "personal defense so as to bar the [claimant's] tort case" against a defendant other than GIIP.

After careful consideration of the Act and the *Hodges* and *Lee* cases, the Court concludes that even if GIIP has a valid statutory defense that would absolve it from liability in this case, Rutland may not assert that defense to substantively bar USA's tort action against it. Furthermore, if USA recovers against Rutland, Rutland's obligation to pay USA's judgment is not dependent on GIIP's obligation to reimburse Rutland.

### 3. GIIP's Liability

■ Having determined that USA is a "person which has a net worth greater than $3 million" and the Act's limitation on GIIP's direct liability does not bar USA's tort action against Rutland, the question now becomes whether GIIP can be held liable at all for the event in question. Once again, the law is less than clear.

The Act clearly contemplates third-party claims. *See, e.g.,* O.C.G.A. §§ 33–36–3(2)(E) ("A covered claim shall not include that portion of any third-party claim, other than a worker's compensation claim, which is in excess of the applicable limits provided in the policy or $100,000, whichever is less"); 33–36–3(2)(A)(v) (a "covered claim" includes claims "under a liability or worker's compensation insurance policy when either the insured or third-party claimant was a resident of this state at the time of the insured event"). Moreover, the Act's explicit exclusion from coverage of claims brought by claimants which have net worths greater than $3 million is not qualified in any way with respect to first- or third-party claimants. *See* O.C.G.A. § 33–36–3(2)(F). Thus, it is reasonable to assume that the legislature intended this exclusion to apply to both first- and third-party claimants. While this does not unequivocally solve the Court's quandary, it does tend to support the conclusion that the Act is designed to shield GIIP in all circumstances from claims brought by claimants, whether first- or third-party, which have the requisite net income.

Two factors mitigate in the opposite direction. First, USA's claim is against Rutland, not GIIP, and thus, USA is not technically a first- or a third-party claimant, at least not at this time. The practical signifi-

cance of this distinction is not entirely clear, particularly if GIIP is ultimately held liable for the loss in question. Nonetheless, USA has not brought a claim against GIIP at this time, and it is uncertain that it ever will.

Second, there is only one case that is at all on point, and its instructive value is limited. *Georgia Insurer's Insolvency Pool v. Southeast Atl. Cargo Operators* ("SEACO"), 211 Ga.App. 660, 440 S.E.2d 254 (1994). In *SEACO,* a SEACO employee was injured while working in a warehouse operated by the Georgia Ports Authority ("GPA"). The employee sued GPA, and GPA brought a third-party indemnity action against SEACO. After the third-party claim was filed, SEACO's insurer was declared insolvent and GIIP took up SEACO's defense. GPA settled with the employee and pursued its indemnity action against SEACO. A jury returned a verdict against SEACO. *Georgia Ports Authority v. Southeast Atl. Cargo Operators,* 202 Ga.App. 318, 414 S.E.2d 232 (1991). SEACO paid the judgment and filed with GIIP for reimbursement. After GIIP denied liability based upon the fact that GPA had a net worth in excess of $3 million, SEACO sued GIIP. The Georgia Court of Appeals held:

> It is true that the Act contemplates third-party claims, see, e.g., OCGA § 33–36–3(2)(E), and that in some cases the assets of the third party will be determinative for purposes of OCGA § 33–36–3(2)(F). In this case, however, the third-party claimant has already recovered, and it is SEACO, the insured, which has actually filed the claim against GIIP.
>
> . . .
>
> Thus, we agree with the trial court that the claim in question is an obligation owed to SEACO rather than GPA, and it is therefore SEACO's net worth that is relevant for the purposes of OCGA § 33–36–3(2)(F) under these circumstances.

*SEACO,* 211 Ga.App. at 660–61, 440 S.E.2d 254.

This holding indicates that "in some cases the assets of the third party will be determinative for the purposes of OCGA § 33–36–3(2)(F)," *id.,* but it does not elucidate on when or in what circumstances. Furthermore, it appears that the case turned to a significant degree on the facts that a judgment was returned against SEACO, that SEACO paid the judgment, and that SEACO, not GPA, physically filed the claim. While the Court does not necessarily agree with the distinctions that the Georgia court has drawn, it is bound by them to the extent that they constitute precedent.

In the case at bar, it is too early to know if a verdict will be returned against Rutland, and if so, whether Rutland will pay the judgment. If that occurs, however, and if Rutland files for reimbursement against GIIP, it would be difficult to distinguish this case from *SEACO.* Thus, there remains a possibility that GIIP can be held liable for the loss in question. In light of the uncertainty of facts that are yet to be developed in this case, the Court cannot conclude at this time that GIIP is entitled to judgment as a matter of law.

## CONCLUSION

The Court has concluded that while USA is a "person which has a net worth greater than $3 million" for the purposes of the Act, this fact does not substantively bar USA's tort claim against Rutland and does not necessarily preclude ultimate liability from falling upon GIIP. Thus, neither GIIP nor Rutland are entitled to summary judgment as a matter of law. USA is entitled to partial summary judgment on the issue of whether it is substantively barred from pursuing its action against Rutland. Accordingly, GIIP's and Rutland's motions for summary judgment are **DENIED** and USA's motion for partial summary judgment is **GRANTED.**

SO ORDERED.