ATTORNEY GENERAL ex rel DEPARTMENT OF NATURAL
RESOURCES v MICHIGAN PROPERTY AND CASUALTY GUARANTY
ASSOCIATION

Docket No. 168022. Submitted December 5, 1995, at Lansing. Decided
August 20, 1996, at 9:00 A.M. Leave to appeal sought.

The Attorney General, on the relation of the Department of Natural
Resources, brought an action in the Ingham Circuit Court against
the Michigan Property and Casualty Guaranty Association, seeking
a declaration that the defendant, as the guarantor of the obligations
of an insolvent member insurer, must pay on surety bonds issued
by the insurer for oil wells that have been abandoned and, at the
expense of the DNR, cleaned up. The court, Lawrence M. Glazer, J.,
granted summary disposition for the defendant, ruling that the
claims by the DNR against the association were not covered claims
under the Property and Casualty Guaranty Association Act, MCL
500.7925(3); MSA 24.17925(3), because the State of Michigan, as a
person, had a net worth greater than 1/10 of one percent of the
aggregate premiums written by the association's member insurers
in the state during the preceding calendar year. The plaintiff
appealed.

The Court of Appeals held:

1. The Insurance Code, of which the Property and Casualty Guar-
anty Association Act is a part, defines "person" as, among other
things, a "legal entity." MCL 500.114; MSA 24.1114. A legal entity is
one that has sufficient existence in legal contemplation that it can
function legally, be sued or sue, and make decisions through
agents. The State of Michigan is a legal entity and thus is a person
for purposes of the net worth exception under MCL 500.7925(3);
MSA 24.17925(3).

2. The purpose of the net worth exception is to prevent payment
of guaranty association funds to those that are relatively able to
bear the loss when their insurers become insolvent. Net worth is
used as an estimate of wealth and thus of the ability to absorb a
loss. Because the State of Michigan is more able than most individ-
uals to bear financial loss, it would be consistent with the purpose
of the net worth exception to apply the exception to the state.

3. The defendant introduced evidence that the net worth of the State of Michigan exceeded the level set by the net worth exception, and the plaintiff did not present evidence that the state's net worth was less than the level set by the exception. The plaintiff accordingly did not carry his burden under MCR 2.116(G)(4) of setting forth specific facts to show that there was a genuine issue for trial.

Affirmed.

D. B. LEIBER, J., dissenting, agreed that the State of Michigan is a "person" for purposes of the Insurance Code, but disagreed that the net worth exception of the Property and Casualty Guaranty Association Act applies to the state in the absence of any indication that the Legislature intended the exception to apply to the state.

INSURANCE — PROPERTY AND CASUALTY GUARANTY ASSOCIATION — NET WORTH EXCEPTION — STATE OF MICHIGAN.

The State of Michigan, as a legal entity, is a person to whom the net worth exception of the Property and Casualty Guaranty Association Act may apply (MCL 500.7925[3]; MSA 24.17925[3]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Stephen F. Schuesler*, Assistant Attorney General, for the plaintiff.

*Dykema Gossett PLLC* (by *Suzanne Sahakian*), for the defendant.

Before: McDONALD, P.J., and WAHLS and D. B. LEIBER,* JJ.

WAHLS, J. The Department of Natural Resources assumed responsibility for the cleanup and site restoration of several illegally abandoned oil wells and sought reimbursement from the well operators' surety, the Oil & Gas Insurance Company (OGIC). However, the OGIC proved insolvent and was liquidated by order of an Ohio court. Thereafter, the Attorney General, on behalf of the DNR, instituted this suit to have the claims against the insolvent OGIC paid

---

* Circuit judge, sitting on the Court of Appeals by assignment.

by defendant. Both parties filed cross motions for summary disposition. The trial court denied plaintiff's motion and granted defendant's motion. We affirm.

Defendant was created pursuant to the Property and Casualty Guaranty Association Act, MCL 500.7901 *et seq.*; MSA 24.17901 *et seq.*, in order to guarantee claims made against insolvent insurance companies in Michigan. The OGIC was a member of defendant. In correspondence, defendant admitted that plaintiff's claims fell under the general definition of "covered claims" found in MCL 500.7925; MSA 24.17925. The controversy in this appeal centers on whether MCL 500.7925(3); MSA 24.17925(3) provided an exception that operated to exclude plaintiff's claims. That subsection provides:

> Covered claims shall not include obligations to an insurer, insurance pool, underwriting association, or to a person who has a net worth greater than 1/10 of 1% of the aggregate premiums written by member insurers in this state in the preceding calendar year.

I

The first question is whether the State of Michigan is a "person" for purposes of this subsection. Plaintiff argues that because the Legislature did not specifically define "person" to include the state, the state should be excluded. We disagree.

Statutory interpretation is a question of law that this Court reviews de novo. *In re Lafayette Towers*, 200 Mich App 269, 273; 503 NW2d 740 (1993). The cardinal rule of statutory construction is to identify and to give effect to the intent of the Legislature. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). The first step in ascertaining such intent is to

focus on the language in the statute itself. *Id.* If the statutory language is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Id.*

Here, the Insurance Code defines a "person" as "an individual, insurer, company, association, organization, Lloyds, society, reciprocal or inter-insurance exchange, partnership, syndicate, business trust, corporation, and any other legal entity." MCL 500.114; MSA 24.1114. Although the Insurance Code does not define "legal entity," Black's Law Dictionary (5th ed), p 804, defines that term as "[a]n entity, other than a natural person, who has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations." Certainly, the State of Michigan functions legally, can sue and be sued, and makes decisions through its agents. Accordingly, Michigan is included within the definition of person as "any other legal entity." *Oakland Co Rd Comm v Michigan Property & Casualty Guaranty Ass'n*, 217 Mich App 154; 550 NW2d 856 (1996); see *Georgia Insurers Insolvency Pool v Elbert Co*, 258 Ga 317, 318; 368 SE2d 500 (1988).

This interpretation is consistent with another chapter of the Michigan Insurance Code. The Legislature defined "insurer" in MCL 500.106; MSA 24.1106 as "any individual, corporation, association . . . and *any other legal entity*, engaged or attempting to engage in the business of making insurance or surety contracts." Then, in MCL 500.1301(a); MSA 24.11301(a), for purposes of the Insurance Code chapter involving holding companies, the Legislature incorporated the definition of "insurer" from § 106, but stated that the

definition does not include "a state or political subdivisions of a state." This indicates that the Legislature believed that the state could be considered "any other legal entity" as defined in § 106 despite not being specifically mentioned in the general definition.

Sections 106 and 114 are part of the same chapter of the Insurance Code and should be read in pari materia. The object of the in pari materia rule of statutory construction is to carry into effect the purpose of the Legislature as found in harmonious statutes regarding a subject. *Skene v Fileccia*, 213 Mich App 1, 5; 539 NW2d 531 (1995). As with § 106, the state should be considered as "any other legal entity" for purposes of § 114 despite not being mentioned in the general definition. Accordingly, the trial court did not err in considering the State of Michigan to be a "person" for purposes of interpreting MCL 500.7925(3); MSA 24.17925(3).

II

The second issue is whether the State of Michigan can be said to possess a "net worth." Plaintiff argues that this term is reserved for accounting in the private sector. We disagree.

It is consistent with the purpose of the "net worth exception" to apply it to governmental entities. The purpose of Michigan's net worth exception is to prevent payment of guaranty association funds to those that are relatively able to bear the loss when an insurer becomes insolvent. See *Borman's, Inc v Michigan Property & Casualty Guaranty Ass'n*, 925 F2d 160, 162 (CA 6, 1991). Net worth is used as an estimate of wealth and thus of the ability to absorb a loss. *Id.*, p 163. Because the State of Michigan is more

able to bear financial loss than most individuals or small corporations, it is consistent with the purpose of the exception to apply it to the State of Michigan. Indeed, this Court held in *Oakland Co Rd Comm*, *supra*, p 161, that the plaintiff governmental entity had failed to rebut the defendant's proof that the plaintiff had a calculable net worth.

The fact that some foreign courts have stated that the concept of net worth does not *usually* apply to governmental entities[1] does not mean that the concept *can* not apply. Rather, the concept has been applied to governmental entities. Georgia has a "net worth exception" that is almost identical to the Michigan one. See *Georgia Insurers Insolvency Pool*, *supra*, p 317. Because the parties in *Georgia Insurers* had stipulated the county's net worth, the Georgia Supreme Court did not directly address the application of "net worth" to a governmental entity. *Id.*, p 318. However, the court did apply the concept to a county without comment. *Id.*

Similarly, in *United States v Rutland, Inc*, 849 F Supp 806, 810 (SD Ga, 1994), aff'd 46 F3d 71 (CA 11, 1995), the trial court took judicial notice that the net worth of the United States exceeded $3 million. Finally, in a 1985 amendment of the Equal Access to Justice Act (EAJA), 28 USC 2412, Congress provided that a "unit of local government, . . . the net worth of which exceeds $7,000,000 at the time the civil action was filed" could recover attorney fees under the EAJA. *City of Brunswick v United States*, 849 F2d 501, 502 (CA 11, 1988). Pursuant to this statute, the same

---

[1] See *City of Brunswick v United States*, 849 F2d 501, 503 (CA 11, 1988); *Citizens Council of Delaware Co v Brinegar*, 741 F2d 584, 589 (CA 3, 1984).

court that stated that "the term 'net worth' generally is not used in reference to the financial status of a municipality" nevertheless applied the term to a municipality. *Id.*, p 503.

The trial court did not err in holding that the concept of net worth applies to a governmental entity such as the State of Michigan.

III

Finally, it must be determined whether Michigan's net worth exceeded the cutoff provided by the exception. It was not disputed that the aggregate premiums written by member insurers in 1989, the relevant calendar year, totaled $7,895,198,000. Accordingly, the statutory net worth cutoff was $7,895,198. MCL 500.7925(3); MSA 24.17925(3).

A person's "net worth" is the remainder that is left after liabilities are deducted from assets. Black's Law Dictionary (5th ed), p 939; *Borman's, supra,* p 161. Defendant's affiant used this definition to calculate that Michigan's net worth as of September 30, 1989, was $886,688,000. Although plaintiff disputed that number, no evidence was presented that Michigan's net worth was less than $7.9 million. Accordingly, plaintiff did not satisfy his burden under MCR 2.116(G)(4) to set forth specific facts to show that there is a genuine issue for trial. *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994); *Oakland Co Rd Comm, supra,* p 161. Defendant was entitled to judgment as a matter of law. *Bourne v Farmer's Ins Exchange,* 449 Mich 193, 197; 534 NW2d 491 (1995).

Affirmed.

McDonald, P.J., concurred.

D. B. LEIBER, J. (*dissenting*). I respectfully dissent.

I agree that the State of Michigan is a "person" for purposes of the Michigan Insurance Code, MCL 500.114; MSA 24.1114.

However, in the absence of any legislative history addressing whether the Legislature intended to include governmental entities within the scope of the "net worth exception" of the Property and Casualty Guaranty Association Act, MCL 500.7925(3); MSA 24.17925(3), I would hold this exception inapplicable to the Department of Natural Resources and would determine defendant liable for the amounts of the bonds, because the claims are "covered claims" under MCL 500.7925; MSA 24.17925.

Reliance on Georgia—the only other state having a "net worth exception" in their insurance guaranty act—is unavailing. The Georgia Supreme Court did not address the application of "net worth" to a governmental entity. Rather, that court summarily assumed that "net worth" had relevance because the parties there stipulated its existence. *Georgia Insurers Insolvency Pool v Elbert Co*, 258 Ga 317; 368 SE2d 500 (1988).

So too, in *United States v Rutland, Inc*, 849 F Supp 806 (SD Ga, 1994), aff'd 46 F3d 71 (CA 11, 1995), the federal district court merely took judicial notice of the existence of a net worth for the United States at the time of the insured event.

In *City of Brunswick v United States*, 849 F2d 501 (CA 11, 1988), unlike the legislative silence here, Congress made the term "net worth" applicable to local governments by an explicit statutory provision.

Clearly, the purpose of the "net worth exception" is to prevent payment of guaranty association funds to

those relatively able to bear the loss when an insurer becomes insolvent. *Borman's, Inc v Michigan Property & Casualty Guaranty Ass'n*, 925 F2d 160 (CA 6, 1991). In the context of this case the question is clear: who will absorb the loss created by the insolvency of the surety for several oil prospectors.

The answer is likewise plain. Given the rule of statutory construction that insurance laws are to be construed in favor of the insured and the public, *Yetzke v Fausak*, 194 Mich App 414; 488 NW2d 222 (1992), legislative silence here is not a mandate for the public to pick up the tab. The burden justifiably falls to the defendant, an association of insurers created for the public benefit.

In the face of obvious ambiguity regarding the application of the term "net worth" to a governmental entity, I would hold that the term was not intended to apply to the State of Michigan. Accordingly, I would reverse the grant of summary disposition in favor of defendant and grant summary disposition in favor of plaintiff.