WATSON v BUREAU OF STATE LOTTERY

Docket No. 191740. Submitted July 1, 1997, at Lansing. Decided July 22, 1997, at 9:15 A.M.

Laura A. Watson and nine other members of the Sweet Sixteen Lotto Club and the Sweet Sixteen Lotto Club petitioned the Macomb Circuit Court for an order pursuant to § 25(1) of the Lottery Act, MCL 432.25(1); MSA 18.969(25)(1), requiring the Michigan Bureau of State Lottery and the Commissioner of the Michigan Bureau of State Lottery to allow them to assign their lotto prize winnings to Prosperity Partners, Inc. The respondents argued that although § 25(1) allows payment of lotto winnings to a person other than the winner "pursuant to an appropriate judicial order," the judicial orders contemplated by that provision were orders of child support, disposition of marital property, or garnishment or orders of a bankruptcy or probate court, but did not contemplate judicial orders entered pursuant to voluntary assignments. The court, Raymond R. Cashen, J., entered an order allowing assignment of the lotto prize winnings and requiring the respondents to make future annual payments of the pro-rata shares of the individual petitioners to Prosperity Partners, Inc. The respondents appealed.

The Court of Appeals *held*:

1. Because the petitioners were not seeking damages from the respondents but were rather seeking declaratory relief that would allow them to assign their lottery winnings, the Court of Claims did not have exclusive jurisdiction of the matter. The circuit court had and properly exercised subject-matter jurisdiction with respect to the petition filed by the petitioners.

2. Because § 25(1) does not define what is meant by "an appropriate judicial order," that phrase, through the application of the rules of judicial construction, is held to mean an order issued within the proper discretion and jurisdiction of the court issuing the order. There is nothing in the language of § 25(1) that limits a court's jurisdiction and discretion to the granting of orders of child support, disposition of marital property, or garnishment or orders of a bankruptcy or probate court, as suggested by the respondents; the specific reference in that section providing for the payment of lottery proceeds to discharge any current liability to the state or

any child support arrearage militates against the reading of the judicial order language suggested by the respondents.

3. A court in exercising its discretion with respect to the granting of a judicial order allowing the assignment of lottery winnings should consider whether the contemplated assignment is in the best interests of both the lottery winner and the state. A court can refuse to grant an order allowing an assignment of lottery winnings where it appears necessary to protect the lottery winner from the effect of human frailties or where the assignment would be unduly burdensome to the state.

4. To the extent that 1979 AC, R 432.17(6), as adopted by the lottery bureau, prohibits all assignments of lottery winnings, it is contrary to the Legislature's pronouncement in § 25(1) of the Lottery Act and, thus, is not binding on the Court of Appeals.

Affirmed.

1. LOTTERIES — CIRCUIT COURTS — ASSIGNMENT OF LOTTERY WINNINGS — JURIS-
DICTION — LOTTERY ACT.

A circuit court has subject-matter jurisdiction to consider a petition to allow the assignment of lottery winnings pursuant to § 25(1) of the Lottery Act (MCL 432.25[1]; MSA 18.969[25][1]).

2. LOTTERIES — ASSIGNMENT OF LOTTERY WINNINGS — APPROPRIATE JUDICIAL
ORDER — LOTTERY ACT.

An appropriate judicial order within the meaning of § 25(1) of the Lottery Act means an order issued within the proper discretion and jurisdiction of the court issuing the order; such an order is not limited to orders of child support, disposition of marital property, or garnishment or orders of a bankruptcy or probate court (MCL 432.25[1]; MSA 18.969[25][1]).

3. LOTTERIES — ASSIGNMENT OF LOTTERY WINNINGS — COURTS — DISCRETION.

A court in exercising its discretion with respect to the granting of a judicial order allowing the assignment of lottery winnings should consider whether the contemplated assignment is in the best interests of both the lottery winner and the state; a court can refuse to grant an order allowing an assignment of lottery winnings where it appears necessary to protect the lottery winner from the effect of human frailties or where the assignment would be unduly burdensome to the state (MCL 432.25[1]; MSA 18.969[25][1]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Keith D. Roberts* and *John M. Cahill*, Assistant Attorneys General, for the respondents.

*Cunningham & Associates* (by *Douglas C. Cunningham*), for the petitioners.

Before: Hood, P.J., and McDonald and Young, JJ.

Hood, P.J. Respondents appeal as of right from the trial court's order allowing the individual petitioners, Laura A. Watson and nine others, to assign their lotto prize installments. We affirm.

Petitioners were members of plaintiff Sweet Sixteen Lotto Club. Sweet Sixteen was the jackpot winner in the Michigan lotto drawing held on July 19, 1995. The jackpot amount was approximately $2,100,000. Each petitioner's pro-rata share was to be paid in twenty gross annual installments of $6,562.50, payable through the year 2014. Petitioners agreed to sell their remaining pro-rata prize installment payments to Prosperity Partners, Inc. Petitioners had to execute and deliver to Prosperity an assignment of their remaining lotto prize installments.

Petitioners and Sweet Sixteen filed a petition for an order allowing the assignment of their lottery winnings. In their petition, petitioners stated that they were not able to assign their lottery winnings to Prosperity unless the trial court issued an order permitting the assignment pursuant to MCL 423.25(1); MSA 18.969(25)(1). The trial court subsequently ordered that respondents show cause why an order allowing petitioners to assign their prize winnings should not be issued. In their answer to the order to show cause, respondents indicated that the assignment of proceeds from a lottery prize was specifically precluded as a matter of law pursuant to MCL 423.25(1); MSA 18.969(25)(1) and administrative rules. Respondents relied on an unpublished per curiam opinion and an

unpublished order from this Court, as well as cases from other jurisdictions.

At the hearing on the order to show cause, respondents argued that assignments are awkward and complicated and place a burden on the lottery bureau. Respondents also argued that the Legislature had prohibited such assignments. The trial court found that a prize winner should have "a right of assignment." The court noted that the only consideration is whether there is double jeopardy or liability to the state. The trial court then issued an order allowing petitioners to assign their prize winnings. In its findings of fact, the trial court stated:

> This Court has the authority and jurisdiction to issue an appropriate judicial order to direct that lottery prize payments are to be made to a person other than the prize claimant, pursuant to 1972 PA 239, § 25, being MCL 432.25, and concludes that the request of Plaintiffs herein warrants issuance of such an order.

I

Respondents first argue that the Court of Claims has exclusive jurisdiction over petitioners' claim against the State of Michigan because it is a contract action.[1] We disagree. Whether a court has subject-matter jurisdiction is a question of law. *Smith v Smith*, 218 Mich App 727, 729; 555 NW2d 271 (1996). We note that, although the jurisdictional issue here was not raised in the trial court, a challenge to subject-matter jurisdiction may be raised at any time,

---

[1] Respondents claim that anyone who purchases a lottery ticket enters into a contractual relationship with the lottery bureau and, therefore, the petitioners' action arose out of a contract.

even if raised for the first time on appeal. *Id.* at 729-730.

MCL 600.605; MSA 27A.605 defines the original jurisdiction of circuit courts:

> Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.

Pursuant to MCL 600.6419(1)(a); MSA 27A.6419 (1)(a), the Court of Claims has exclusive jurisdiction:

> To hear and determine all claims and demands, liquidated or unliquidated, ex contractu, and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms, or agencies.

A complaint raising a claim against the state or its agencies and *seeking only money damages* must be filed in the Court of Claims. *Silverman v Univ of Michigan Bd of Regents*, 445 Mich 209, 217; 516 NW2d 54 (1994); see also *Welch v Dist Court*, 215 Mich App 253, 256; 545 NW2d 15 (1996). A complaint *seeking only equitable or declaratory relief* must be filed in the circuit court. *Silverman, supra.*

In this case, petitioners were not seeking money damages from respondents. Rather, petitioners sought only declaratory relief that would allow them to assign their lottery winnings to Prosperity. Accordingly, the Court of Claims does not have exclusive jurisdiction over petitioners' claim. The circuit court therefore properly exercised subject-matter jurisdiction over petitioners' petition.

II

Respondents next contend that the Lottery Act, MCL 432.1 *et seq.*; MSA 18.969(1) *et seq.*, and the administrative rules promulgated pursuant to that act specifically preclude the voluntary assignment of a prize winner's interest in a lottery prize. Specifically, respondents contend that the Lottery Act only permits payments to those other than winners according to a judicial determination such as a marital property disposition or child support order or other such "appropriate judicial order," and that assignments such as the one sought by petitioners are completely unrelated to these types of orders. No Michigan court has previously issued a published opinion construing MCL 432.25(1); MSA 18.969(25)(1) as it relates to this issue.

The relevant part of the Lottery Act, MCL 432.25(1); MSA 18.969(25)(1), provides:

> The right of any person to a prize drawn is not assignable, except that payment of any prize drawn from the state lottery may be paid to the family members or to the estate of a deceased prizewinner as provided in subsection (2), to a person *pursuant to an appropriate judicial order*, or to the state pursuant to section 32.[2]

Statutory interpretation is a question of law that is reviewed de novo. *Rose Hill Center, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997); *Smeets v Genesee Co Clerk*, 193 Mich App 628, 633; 484 NW2d 770 (1992). If the plain and ordinary meaning of the

---

[2] Section 32 refers to MCL 432.32; MSA 18.962(32), which requires the lottery bureau to determine before a prize of $1,000 or more is paid whether the winner has a current liability to the state or a child support arrearage.

language is clear, judicial construction is normally neither necessary nor permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). If reasonable minds can differ with respect to the meaning of a statute, however, judicial construction is appropriate. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). The first criterion in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). The Legislature is presumed to have intended the meaning it plainly expressed. *Institute in Basic Life Principles, Inc v Watersmeet Twp (After Remand)*, 217 Mich App 7, 12; 551 NW2d 199 (1996). A court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Barr v Mt Brighton Inc*, 215 Mich App 512, 516; 546 NW2d 273 (1996).

One probable objective of MCL 432.25(1); MSA 18.969(25)(1) is to prohibit voluntary assignments to the extent that there is no procedural safeguard to protect prize winners from their own human frailties. On the other hand, the statute also functions to prevent the state from being unduly burdened. The statute unambiguously places a general prohibition on the assignment of lottery prizes, but specifically pro-

vides three exceptions to this prohibition: (1) the winnings may be paid to the family members or to the estate of a deceased prizewinner; (2) the winnings may be paid to a person *pursuant to an appropriate judicial order*; or (3) the winnings may be paid to the state on the basis of a winner's liability to the state or a support arrearage.

The language of the exception at issue in this case—pursuant to an appropriate judicial order—is ambiguous to the extent that the statute does not define the language and does not set forth factors to be considered in determining whether this exception is to apply. In interpreting statutes, however, all words and phrases are to be construed and understood according to the common and approved usage of the language. *In re PSC's Determination Regarding Telephone Service, No 2*, 204 Mich App 350, 353; 514 NW2d 775 (1994). Reference to a dictionary is appropriate to ascertain the ordinary meaning of a word. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994).

The phrase "judicial order" means an order that involves the exercise of judicial discretion and affects the final result of litigation. Black's Law Dictionary (5th ed), p 761. The adjective "appropriate" connotes suitability or compatibility. *Webster's Third New International Dictionary, Unabridged Edition* (1966), p 106. Accordingly, an appropriate judicial order is an order issued within the proper discretion and jurisdiction of the court.

Despite the language of the statute, respondents seek an interpretation of an "appropriate judicial order" that is limited to "property settlements in divorce actions," "child support or separate mainte-

nance, bankruptcy court orders, garnishment orders and probate court orders." Respondents seek, in effect, to rewrite the statute because nowhere in the statute is such an interpretation suggested. If the Legislature had intended an "appropriate judicial order" to be limited to "property settlements in divorce actions," "child support or separate maintenance, bankruptcy court orders, garnishment orders and probate court orders," it surely could have used those words. It did not. It is not our function to read into statutes meanings that are not contained therein.

Furthermore, if we accept respondents' reasoning, the language "appropriate judicial order" would merely be surplusage. In construing statutes, a court should presume that every word has some meaning and should avoid any construction that would render a statute, or any part of it, surplusage or nugatory. *Marquis, supra.* The Legislature is presumed to be familiar with rules of statutory construction. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). Given that the exceptions relating to child support and prior obligations to the state are plainly provided for in the statute, MCL 432.32; MSA 18.969(32), it would be inconsistent with the rules of statutory construction to conclude that the language "appropriate judicial order" contemplates those exceptions.

Moreover, the authorized discretionary power of the courts adequately functions to achieve the intent of the statute. We believe that a court can properly exercise its discretion in determining whether a purported assignment is reasonable or in the best interests of the parties involved, including both the state and the prizewinner. Courts have the ability to reject

an assignment when this action appears necessary to protect a lottery winner from personal human frailties. Courts also have the power to refuse an assignment if it appears to be unduly burdensome to the state, where, for example, the assignment is for only a temporary period, or where multiple assignments are attempted. While it is true that a winner could petition the courts for an assignment for any reason, however frivolous, that assignment can only be approved by an appropriate court order. It would surely be inappropriate to approve an assignment simply on the whim of a prizewinner.

In support of their position, respondents rely on a prior unpublished decision and an unpublished order from this Court. Unpublished opinions, however, are not binding precedent, MCR 7.215(C)(1); *Stine v Continental Casualty Co*, 419 Mich 89, 95, n 2; 349 NW2d 127 (1984); *In re Skotzke Estate*, 216 Mich App 247; 548 NW2d 695 (1996), nor do we find the unpublished opinion and order cited by the respondents to be persuasive. Respondents also rely on cases from other jurisdictions that addressed the identical issue and interpreted a statute similar to the one involved here. See *Walker v Rogers*, 272 Ill App 3d 86; 650 NE2d 272 (1995), and *R & P Capital Resources, Inc v California State Lottery*, 31 Cal App 4th 1033; 37 Cal Rptr 2d 436 (1995). The courts in both *Walker* and *R & P Capital Resources, Inc*, construed their respective statute narrowly and held that voluntary assignments of lottery prize winnings are prohibited. Although cases from other jurisdictions may provide guidance in some circumstances, we nonetheless are not bound to follow their reasoning or holdings. For the reasons previously stated, we find neither case persuasive.

Respondents also argue that assignments are prohibited by an administrative rule adopted by the lottery bureau, 1979 AC, R 432.17(6), which provides:

A ticket holder may not assign or sell his ticket or right to any prize to another party once he has identified himself to the bureau as a prize winner or potential prize winner.

This rule does not contain the language adding an exception for those made pursuant to an appropriate court order. Nevertheless, while an agency is afforded some statutory deference, an agency's interpretation is not binding on this Court and cannot be used to overcome the plain meaning of a statute. *Ludington Service Corp v Acting Comm'r of Ins*, 444 Mich 481, 505; 511 NW2d 661 (1994), amended 444 Mich 1240 (1994).

We therefore conclude that the trial court did not err in issuing an order pursuant to MCL 432.25(1); MSA 18.969(25)(1), allowing petitioners to assign their lottery winnings. The language "appropriate judicial order" does not simply contemplate payments relating to marital property disposition, child support, prior obligations to the state, or the equivalent. Courts are capable of properly exercising their discretion in determining whether a purported assignment is reasonable or in the best interests of the parties involved.

Affirmed.