572 N.W.2d 663 (1997)
B P 7 and Jerry Renouf, Plaintiffs-Appellees,
v.
MICHIGAN BUREAU OF STATE LOTTERY and Commissioner of Michigan Bureau of State Lottery, Defendants-Appellants.
Romil GEWARGES, Plaintiff-Appellee,
v.
BUREAU OF STATE LOTTERY and Commissioner of Bureau of State Lottery, Defendants-Appellants.
Docket Nos. 192826, 192827.
Court of Appeals of Michigan.
Released September 9, 1997 at 9:00 a.m.
Vacated September 23, 1997.
Released for Publication December 23, 1997.
Before CORRIGAN, C.J., and MICHAEL J. KELLY and HOEKSTRA, JJ.

ORDER
B P 7 v. Bureau of State Lottery, Docket No. 192826, and Gewarges v. Bureau of State Lottery, Docket No. 192827. The Court orders that a special panel shall be convened pursuant to MCR 7.215(H) to resolve the conflict between this case and Watson v. Michigan Bureau of State Lottery, 224 Mich. App. 639, 569 N.W.2d 878 (1997).
The Court further orders that the opinion in this case released September 9, 1997, is hereby vacated.
The appellant may file a supplemental brief within 28 days of the clerk's certification of this order. Appellee may file a supplemental brief within 21 days of service of appellant's brief. Nine copies must be filed with the Clerk of Court.
HOEKSTRA, Judge.
In these consolidated appeals, defendants Michigan Bureau of State Lottery and its commissioner appeal as of right orders of the Eaton Circuit Court allowing plaintiffs Jerry Renouf and Romil Gewarges to sell and assign to a third party a portion of their future annual installments of prize winnings from Michigan Lotto drawings. We affirm.
Plaintiff Jerry Renouf was a member of plaintiff B P 7, a lottery club that won $10,027,942 on April 27, 1991. Renouf's pro-rata share of the winnings entitles him to annual installments of $71,614.28, payable through the year 2010. Plaintiff Romil Gewarges was the July 23, 1986, winner of a $1,398,000 Lotto jackpot. He receives annual installments of $69,900, payable through the year 2005.
Plaintiffs Renouf and Gewarges desired to sell portions of their future installments for present cash value to Prosperity Partners, Inc. Specifically, Renouf wanted to sell Prosperity Partners, Inc., $21,428 from each of his remaining fifteen annual installments and Gewarges wanted to sell $28,874 from each of his remaining ten installments. However, Prosperity Partners, Inc., apparently would not agree to purchase these future entitlements unless plaintiffs would agree to assign their rights to the future, partial installments to Prosperity Partners, Inc. Although plaintiffs were agreeable to this arrangement, the Bureau of State Lottery, relying on M.C.L. § 432.25(1); M.S.A. § 18.969(25)(1), refused to honor the assignments. M.C.L. § 432.25(1); M.S.A. § 18.969(25)(1), provides, in pertinent part:
The right of any person to a prize drawn from the state lottery is not assignable, except that payment of any prize drawn may be paid to the family members or to the estate of a deceased prizewinner as provided in subsection (2), to a person pursuant to an appropriate judicial order, or to the state pursuant to section 32 [when there is a current liability to the state or a support arrearage].
Plaintiffs then brought these actions, seeking judicial orders allowing them to sell and assign a portion of their winnings to Prosperity Partners, Inc. After determining that plaintiffs' requests were not the result of undue influence and were their free and voluntary choices, and would not cause detriment to the State of Michigan, the trial court entered *664 orders allowing the assignment of plaintiffs' Lotto prizes.

I
Defendants first argue that the circuit court lacked subject-matter jurisdiction to hear these claims involving a state agency because they were ex contractu and thus were subject to the exclusive jurisdiction of the Court of Claims. We disagree. In Watson v. Bureau of State Lottery, 224 Mich.App. 639, 569 N.W.2d 878 (1997), this Court addressed this identical issue and held that complaints against the state seeking only equitable or declaratory relief, such as the instant complaint, must be filed in the circuit court. Accordingly, because plaintiffs herein sought only declaratory relief, and not money damages, the case was properly filed in the circuit court. Defendants' claim to the contrary is without merit.

II
Defendants next argue that the trial court erred in entering orders allowing plaintiffs to assign portions of their prize installments to a third party because the Lottery Act M.C.L. § 432.1 et seq.; M.S.A. § 18.969(1) et seq., specifically precludes the assignment of a prize winner's interest in a lottery prize absent certain conditions, none of which apply to these cases. This issue was also addressed by this Court in Watson, and the Court affirmed the assignment, holding that trial courts have discretion to issue orders when purported assignments are "reasonable or in the best interests of the parties involved" and that this discretion to issue orders is not limited to certain types of orders. Because Watson is binding precedent under MCR 7.215(H), we must affirm the trial court's issuance of the orders allowing assignments in these cases. However, we disagree with this portion of the Watson opinion, and we follow it only because we are bound by court rule to do so.
The basis for our disagreement lies in the Watson Court's decision to let the exceptions to assignability swallow the rule forbidding assignment. Generally, contract law allows for the assignment of rights unless assignability is clearly restricted. Calamari & Perillo, Contracts (3d ed.), § 18-10, p. 735. However, in the instant case plaintiffs' contracts with defendant lottery bureau, which encompassed M.C.L. § 432.25(1); M.S.A. § 18.969(25)(1) of the Lottery Act, contained a clear prohibition on the transfer of ownership"the right of any person to a prize drawn from the state lottery is not assignable[.]" At issue is whether plaintiffs qualify for one of the exceptions to the rule prohibiting assignment"except that payment of any prize drawn may be paid ... to a person pursuant to an appropriate judicial order." (Emphasis added.) Id. We would hold that they do not, because we believe that the orders issued to plaintiffs were not "appropriate judicial orders" as contemplated by the Legislature in enacting the statute at issue.
The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent in enacting a provision. USAA Ins. Co. v. Houston General Ins. Co., 220 Mich.App. 386, 389, 559 N.W.2d 98 (1996). Statutory language should be construed reasonably, keeping in mind the purpose of the statute. Id. If statutory language is clear and unambiguous, judicial construction is not permitted or required. Id. If, however, reasonable minds could differ regarding the meaning of a statute, judicial construction is appropriate. Id. at 389-390, 559 N.W.2d 98.
Here, we conclude that reasonable minds could differ regarding the meaning of the phrase "appropriate judicial order" as used in the statute at issue, because it is not clear under what circumstances an order is to be considered "appropriate." In this case, the trial court found that the issuance of an order was appropriate because plaintiffs were making the choice of their own free will and there was no detriment to the state. We conclude that the trial court's interpretation of what circumstances would make the issuance of an order appropriate was erroneous. To interpret the statute as broadly as the trial court did, and as this Court in Watson did, would allow one of the exceptions to nonassignability to swallow the rule prohibiting the assignment of prizes.
*665 We agree with defendants that the Legislature intended the exception invoked by plaintiffs to have a much more limited application. As support for our position, we find instructive an Illinois appellate decision interpreting a statutory provision virtually identical to ours. In Walker v. Rogers, 272 Ill.App.3d 86, 208 Ill.Dec. 815, 650 N.E.2d 272 (1995), an Illinois appellate court examined two clauses from the Illinois lottery act: (1) "no prize, nor any portion of a prize, nor any right of any person to a prize awarded shall be assignable" and, (2) "[n]otwithstanding any other provision of this Section, any person pursuant to an appropriate judicial order may be paid the prize to which a winner is entitled." Id. at 89, 208 Ill.Dec. 815, 650 N.E.2d 272. Ultimately, the Walker court concluded that "a plain reading of [the statute] indicates that the voluntary assignment of winnings is prohibited" and that clause one was an absolute prohibition against assignment. Id. Clause two, being an exception to clause one, had to be narrowly construed so that the exception did not completely negate the rule. Id. The Walker court drew a distinction between an order enforcing a judgment and an order declaring valid an assignment. The court construed clause two as applying to
judicial orders entered in separate proceedings where disposition of a lottery prize is an appropriate remedy, such as an order directing payment of prize winnings to a former spouse as part of an equitable distribution or spousal support in a marital dissolution case, for a child support arrearage, or a garnishment order allowing a debtor to satisfy a judgment from a debtor-lottery winner. [Id. at 93, 208 Ill.Dec. 815, 650 N.E.2d 272.]
Similarly, in Converse v. Lottery Comm., 56 Wash.App. 431, 783 P.2d 1116 (1989), a Washington appellate court, citing McCabe v. Director of New Jersey Lottery Comm., 143 N.J.Super. 443, 363 A.2d 387 (1976), held that its lottery statute, again similar to ours, did not permit voluntary assignment of winnings pursuant to "an appropriate judicial order" because such a construction would "swallow the rule." Additionally, the court found that it would "burden the lottery" with administrative expenses associated with paying a winner's potentially numerous assignees. While Watson recognizes that a trial court would not have to issue an order "on the whim of a prizewinner" or where it appears unduly burdensome on the state, the Court in Watson fails to appreciate that the very act of having to come to court to contest paying other assignees pursuant to what could amount to numerous frivolous requests is itself burdensome.
In accordance with the cases discussed above, were it not for Watson, we would hold that the phrase "appropriate judicial order" as used in M.C.L. § 432.25(1); M.S.A. § 18.969(25)(1) is not intended to encompass orders entered merely at the pleasure and request of plaintiffs, such as those entered in the instant case. We would interpret the phrase to apply only to judicial orders entered in separate proceedings, e.g., divorce, custody, or garnishment proceedings, where the disposition of a lottery prize could be an appropriate equitable remedy. To do otherwise allows the exception to negate the rule and subject the state to burdens of investigation, court appearances, and payments to third parties not intended by the Legislature. Therefore, we would reverse on the basis that the trial court erred in granting plaintiffs orders allowing them to assign their prizes to third parties. Not being free to reach that result, we must reluctantly affirm.
Affirmed.