OAKLAND COUNTY BOARD OF COUNTY ROAD COMMISSIONERS v
MICHIGAN PROPERTY AND CASUALTY GUARANTY ASSOCIATION

ATTORNEY GENERAL *ex rel* DEPARTMENT OF
NATURAL RESOURCES v MICHIGAN PROPERTY
AND CASUALTY GUARANTY ASSOCIATION

Docket Nos. 106446, 107251. Argued January 8, 1998 (Calendar Nos. 9-10).
Decided March 24, 1998.

The Oakland County Board of County Road Commissioners brought
an action in the Oakland Circuit Court against the Michigan Prop-
erty and Casualty Guaranty Association, seeking indemnification
for third-party personal injury claims it paid after its general liabil-
ity insurer was deemed insolvent and had been liquidated. The
association refused to indemnify the road commission because its
net worth exceeded the statutory maximum, and, therefore, its
claims were not covered claims under the Property and Casualty
Guaranty Association Act, MCL 500.7901 *et seq.*; MSA 24.17901 *et
seq.* The court, Robert C. Anderson, J., granted summary disposi-
tion for the defendant, holding that the net-worth exclusion does
not violate equal protection and applies to the road commission
within the broad definition of "person" under the act, that the obli-
gations of an insolvent insurer are obligations to an insured, not
the claimant, and that the road commission has a calculable net
worth. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and D. J.
KELLY, J. (M. J. KELLY, J., concurring in the result only), affirmed in
an opinion per curiam (Docket No. 166062). The board appeals.

The Attorney General, *ex rel* the Director of the Department of Natu-
ral Resources, brought an action in the Ingham Circuit Court
against the Michigan Property and Casualty Guaranty Association
after its surety was determined insolvent and had been liquidated,
seeking a declaratory judgment that the state was not a person
within the meaning of the act, and the net-worth exclusion may not
be applied to the state or the Department of Natural Resources.
The court, Lawrence M. Glazer, J., granted summary disposition for
the defendant, holding that the state was a person within the mean-
ing of the Property and Casualty Guaranty Association Act, and
that the state had a calculable net worth. The Court of Appeals,

McDONALD, P.J., and WAHLS, J. (D. B. LEIBER, J., dissenting), affirmed (Docket No. 168022). The Attorney General appeals.

In a unanimous opinion by Justice BRICKLEY, the Supreme Court *held*:

The net-worth exclusion of the Property and Casualty Guaranty Association Act applies only to insureds. The state is a person within the meaning of the act. The road commission may not assert an equal protection claim against its creator, the state. The net-worth exclusion applies to both public and governmental entities.

1. Under the plain language of the act, the net-worth exclusion applies to insureds. The Legislature also has plainly expressed that covered claims do not include obligations of an insolvent insurer to a person whose net worth exceeds the statutory limitation. The obligations of the general liability insurer in *Oakland County* to defend and to indemnify were to its insured, the road commission. That it might pay third parties, directly or indirectly, is irrelevant. The act is designed to protect from potentially catastrophic loss persons who have a right to rely on the existence of an insurance policy, the insureds and persons with claims against the insured. Whether an insured or the Michigan Property and Casualty Guaranty Association pays is dependent on the ability of the insured to absorb the loss, as determined by application of the net-worth exclusion, i.e., the specific purpose of the net-worth exclusion is to exclude insureds from the protection of the act who are able to absorb the loss. A third-party claimant does not go unprotected when the insured is deemed able to absorb the loss because the third-party claimant recovers directly from the insured.

2. The state, as a legal entity, falls within the definition of person provided under the act. The act does not divest any right or interest of the state. Rather, it grants a benefit in some circumstances and not others, which is not the same as imposing liability on the state. The state's liability in *Attorney General* arises under the supervisor of wells act. For the Legislature to outline the circumstances under which an insured may receive protection from the act is entirely different from imposing liability on the state. The act also is not interfering with any exclusive grant of authority to the state or one of its agencies. Thus, no reason exists to exclude the state from the act's definition of person.

3. As a creation of the Legislature, the road commission cannot assert an equal protection challenge against its creator, the state. Like a municipal corporation, the road commission's existence is entirely dependent on the legislation that created it, and the Legislature that may also destroy it. Because its claim is not based on any absolute right, it cannot assert an equal protection claim.

4. The term net worth has an ordinary and generally accepted meaning that can be applied to any legal entity, public, private, governmental, or otherwise. Neither the road commission nor the state submitted any calculations to refute those made by the association with respect to the commission's net worth or any evidence to dispute their accuracy. Thus, no genuine issue of material fact exists regarding that issue. Thus, summary disposition was properly granted for the association in both cases. The net-worth exclusion is applicable to both public and governmental entities.

Affirmed.

217 Mich App 154; 550 NW2d 856 (1996) affirmed.

218 Mich App 342; 553 NW2d 700 (1996) affirmed.

*Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by *Alvin A. Rutledge* and *Patrick D. Filbin*), for plaintiff-appellant Oakland County Board of Road Commissioners.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Stephen F. Schuesler*, Assistant Attorney General, for plaintiffs-appellants Attorney General *ex rel* Department of Natural Resources.

*Dykema, Gossett, P.L.L.C.* (by *Suzanne Sahakian* and *Ava K. Ortner*), for defendant-appellee Michigan Property and Casualty Guaranty Association.

Amicus Curiae:

*Miro, Weiner & Kramer, P.C.* (by *Samuel C. Damren* and *Matthew Leitman*); *Hutchins, Wheeler & Dittmar*, of counsel (by *Joseph C. Tanski*), for National Conference of Insurance Guaranty Funds.

BRICKLEY, J.

I

We are called upon to decide several issues in the two cases before us. First, we must determine

whether the "net worth" exclusion of the Property and Casualty Guaranty Association Act, MCL 500.7901 *et seq.*; MSA 24.17901 *et seq.*, applies to insureds or to third-party claimants. Then we must decide whether the state is a "person" within the meaning of the act. Third, we must determine whether the net-worth exclusion violates the Equal Protection Clauses of the federal and Michigan Constitutions.[1] Finally, we must decide whether the net-worth exclusion applies to public and governmental entities.

We conclude that the net-worth exclusion applies to insureds and that the state is a person within the meaning of the act. We also hold that the road commission may not assert an equal protection claim. Finally, we find that the net-worth exclusion applies to both public and governmental entities. Thus, we affirm both decisions of the Court of Appeals.

II

*OAKLAND CO RD COMM'RS v MPCGA*

Between 1981 and 1985, the Board of County Road Commissioners for the county of Oakland maintained general liability insurance through Midland Insurance Company. During that period, personal injury claims were made against the road commission, which fell under the coverage provisions of that insurance. In 1986, Midland was deemed insolvent and liquidated. The road commission paid the third-party claims and sought indemnification from the Michigan Property and Casualty Guaranty Association (MPCGA), a statutorily created association of property and casualty

---

[1] US Const, Am XIV, § 1;  Const 1963, art 1, § 2.

insurers licensed to do business in Michigan. See MCL 500.7901 *et seq.*; MSA 24.17901 *et seq.* The MPCGA has a duty to pay certain obligations of insolvent insurers that come within the act's definition of covered claims. The MPCGA refused to indemnify the road commission because its net worth exceeded the statutory maximum and, therefore, its claims did not constitute covered claims under the act. See MCL 500.7925(3); MSA 24.17925(3).

To understand the facts as they developed below, an examination of the pertinent statutory language is necessary. Section 7925(1) provides, in part,[2] the following definition of covered claims:

> *"Covered claims" means obligations of an insolvent insurer which* meet all of the following requirements:
>
> (a) *Arise out of the insurance policy contracts of the insolvent insurer issued to residents of this state or are payable to residents of this state on behalf of insureds of the insolvent insurer.* [Emphasis added.]

Section 7925 further defines covered claims by setting forth five circumstances in which a claim is excluded from the definition of a covered claim. The relevant exclusion provides:

> Covered claims shall not *include obligations to* an insurer, insurance pool, underwriting association, or *to a person who has a net worth* greater than 1/10 of 1% of the aggregate premiums written by member insurers in this state in the preceding calendar year. [MCL 500.7925(3); MSA 24.17925(3) (emphasis added).]

---

[2] This section outlines additional requirements for "covered claims" which are not at issue here. See subsections (b)-(f).

Finally, "person" is defined under the Insurance Code to include

> an individual, insurer, company, association, organization, Lloyds, society, reciprocal or inter-insurance exchange, partnership, syndicate, business trust, corporation, and any other legal entity. [MCL 500.114; MSA 24.1114.]

In 1985, the calendar year preceding Midland's insolvency, the aggregate premiums written by member insurers totaled $5,820,973,000, yielding the applicable net worth limit of $5,820,973 as set forth in the affidavit of James Lunsted, controller for the MPCGA. In 1985, the road commission's net worth was $18,446,051. In determining the road commission's net worth, Nola Yew, CPA, and semiretired partner in the management consulting service department of an accounting firm, relied on the road commission's financial report for the fiscal year that ended on September 30, 1985, which was prepared by the road commission's own certified public accountants in accordance with generally accepted government accounting standards. She also provided a definition of "net worth" from Kohler's Dictionary of Accountants, explaining that the net worth of any entity is the recorded assets minus the recorded liabilities. Lastly, she stated that all entities have a net worth.

In support of its opposition to the MPCGA's motion for summary disposition, the road commission submitted an amicus curiae brief of the Michigan Municipal League, the work sheet generated by the MPCGA in determining whether the road commission's claim was a covered claim, and the road commission's balance account sheet. All were submitted in support of its position that a genuine issue of material fact

existed regarding whether the road commission had a cognizable net worth.

The trial court, in its opinion and order granting MPCGA's motion for summary disposition pursuant to MCR 2.116(C)(8), (10), held: The net-worth exclusion did not violate equal protection; the obligations of an insolvent insurer are obligations to an insured, not the claimant; the net-worth exclusion applied to obligations to a person and the road commission fell within the broad definition of person, which includes "any other legal entity"; the road commission had a net worth evidenced by its own financial statements and the affidavits of Nola Yew; and the road commission provided no authority to dispute this. The Court of Appeals affirmed the trial court's decision in a per curiam opinion. 217 Mich App 154; 550 NW2d 856 (1996).

*ATTORNEY GENERAL v MPCGA*

The Michigan Department of Natural Resources is the holder and obligee of two surety bonds by which the principals, two oil and gas well owners/operators, and the surety, Oil & Gas Insurance Company, are bound. These bonds were required to be purchased pursuant to a provision of the supervisor of wells act. See MCL 324.61506(p); MSA 13A.61506(p). The wells were then abandoned by the owners without having been properly plugged and without the sites having been cleaned up in accordance with the applicable statutory provisions and administrative regulations. The Supervisor of Wells, pursuant to statutory authority, took proper action to plug the wells and clean up the well sites. The costs of that action are to be borne by the state of Michigan, subject to its statutory reim-

bursement rights. See MCL 342.61501 *et seq.*; MSA 13A.61501 *et seq.* The owners or operators of the wells and the surety on the bonds may be jointly and severally liable for all expenses incurred in the cleanup. MCL 324.61519; MSA 13A.61519.

The surety was determined insolvent and liquidated in 1990. The DNR filed its proof of claims with the MPCGA. The MPCGA rejected the claims on the basis of the net-worth exclusion. The DNR filed this action, seeking a declaratory judgment that the net-worth exclusion may not be applied to the state or the DNR. The DNR filed a motion for summary disposition, arguing that it was not a person within the meaning of the net-worth exclusion. The MPCGA also filed a motion for summary disposition, arguing that the term net worth may be properly applied to the state and that the state's net worth exceeded the statutory limitation. The MPCGA's controller calculated the net-worth limitation in 1989 at $7,895,198 on the basis of the aggregate premiums written by member insurers in 1989, totaling $7,895,198,000.

Nola Yew, a certified public accountant retained by the MPCGA, calculated the state's net worth for 1989 at $886,688,000. In determining the state's net worth, she relied on the Michigan comprehensive annual financial report for the fiscal year ending on September 30, 1989, which was prepared by the Department of Management and Budget in accordance with generally accepted government accounting standards. The DNR "vigorously contested" her calculations with the affidavit of Susan Work Martin, Ph.D., CPA, who stated: The concept of net worth was foreign to the field of governmental accounting, net worth is not an appropriate measurement for a government entity,

and net worth is not a defined term in the generally accepted accounting principles for government entities.

After examining the affidavit of Ms. Martin, Ms. Yew, providing the Kohler's definition of net worth, stated that all entities have a net worth and that the common and acceptable meaning of net worth is what matters, i.e., recorded assets minus recorded liabilities. Instead of submitting a calculation regarding the state's net worth, after Ms. Yew submitted her second affidavit, Ms. Martin simply reiterated her position that it was inappropriate to apply the term net worth to the state.

The trial court, in its partial opinion from the bench, held that the state was indeed a person within the meaning of the act. Moreover, the authority submitted by the DNR to the contrary was inapplicable because it dealt with the conflicts of regulatory authority. The trial court also found, in its final opinion and order granting summary disposition for the MPCGA, that, although Ms. Martin had pointed out two "flaw[s]"[3] in Ms. Yew's computation, she provided no figure that she felt accurately reflected the state's net worth in 1989. The Court of Appeals affirmed the decision of the trial court on both issues. 218 Mich App 342; 553 NW2d 700 (1996).

III

The first issue we are called upon to decide is to which party does the net-worth exclusion apply, the insured or the third-party claimant.[4] To decide this

---

[3] The trial court noted that, even if it took into account these "flaw[s]," the state's net worth was still far in excess of the statutory limit.

[4] This is only at issue in *Oakland Co Rd Comm'rs v MPCGA.*

issue, we must mind basic rules of statutory construction. In giving effect to the intent of the Legislature, where the language of the statute is plain and unambiguous, "we must honor the legislative intent as clearly indicated in that language." *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 538; 565 NW2d 828 (1997). Moreover, we will read the language according to its ordinary and generally accepted meaning. *Shallal v Catholic Social Services of Wayne Co*, 455 Mich 604, 611; 566 NW2d 571 (1997). We conclude that, according to the plain language of the act, the net-worth exclusion applies to the insured.

However, the road commission argues that the Court of Appeals and the MPCGA applied the net-worth exclusion to the wrong entity, that is, it applies only to third-party claimants and not to insureds. The road commission asserts that "covered claims" are defined as obligations "payable to residents of this state on behalf of insureds of the insolvent insurer." See § 7925(1). Thus, asserts the road commission, the obligation runs to the claimant, not the insured; the claim is paid "on behalf of" the insured, not "to" the insured. No obligation is owed to the road commission; therefore, the net-worth exclusion cannot apply.

Not only does the road commission's construction ignore pertinent statutory language, it turns principles of insurance contract law and basic logic on their respective heads. Where the language of a statute is clear, we will enforce the statute as written because the Legislature must have intended the meaning it plainly expressed. *Rowell v Security Steel Processing Co*, 445 Mich 347, 354; 518 NW2d 409 (1994).

The Legislature has defined "covered claims," in part, as "obligations of an insolvent insurer." The net-worth exclusion provides, in part, that "[c]overed claims shall not include *obligations . . . to a person who has a net worth*" in excess of the statutory limit. Section 7925(3) (emphasis added). Thus, the Legislature has plainly expressed that covered claims do not include obligations of an insolvent insurer to a person whose net worth exceeds the statutory limitation.

What, then, is an obligation of the insurer? Basic principles of insurance law provide that an insurance policy is a contract[5] and that the insurer's obligations under that contract include the duty to indemnify and the duty to defend.[6] Midland's obligations to defend and to indemnify were to its insured, the road commission. The road commission confuses "obligation to" with "payable to." Under the insurance policy, Midland's contractual obligations ran to its insured, the road commission. That Midland might *pay* third-parties, directly or indirectly, is irrelevant.[7] We note

---

[5] For example, see *Fire Ins Exchange v Diehl*, 450 Mich 678, 683; 545 NW2d 602 (1996) (an insurance policy is a contract between the parties); *Smith v Physicians Health Plan, Inc*, 444 Mich 743, 759; 514 NW2d 150 (1994) (insurance policies will be treated just like other contracts); *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525; 502 NW2d 310 (1993) (the insurance policy, a contract between the insurer and the insured, controls the interpretation of its own provisions providing benefits not required by statute).

[6] Generally, an insurer has a duty to defend its insured and a duty to indemnify its insured; however, we must emphasize that such duties arise from the policy language. See *Gardner v Ins Co of North America*, 82 Mich App 128, 130; 266 NW2d 474 (1978); *Schiebout v Citizens Ins Co*, 140 Mich App 804, 813; 366 NW2d 45 (1985), aff'd 427 Mich 602; 398 NW2d 411 (1986); *Meridian Mut Ins Co v Hunt*, 168 Mich App 672, 676-677; 425 NW2d 111 (1988).

[7] The Court of Appeals held that "because plaintiff's claims arise from its liability to third parties, the net-worth exclusion . . . must be applied to plaintiff and to plaintiff's third-party claimants." 217 Mich App 160. We

that the road commission has not argued that, under the contractual language of the insurance policy, Midland owed any obligations to any third parties under any circumstances. Application of the act cannot change the nature of the contractual insurance relationship or insert provisions or obligations into the contract not before in existence.[8]

Finally, if we were to accept the road commission's interpretation, the result would not only make little sense, but would defeat the act's very purpose. The act is designed to protect persons from potentially catastrophic loss who have a right to rely on the existence of an insurance policy, the insureds and persons with claims against the insured. *Metry, Metry, Sanom & Ashare v MPCGA*, 403 Mich 117, 121; 267 NW2d 695 (1978).

To illustrate how illogical application of the net-worth exclusion is to third parties, the MPCGA offers the following:

> If a third-party claimant has a net worth that is *less* than the statutory cut-off amount, MPCGA would indemnify the insured, regardless of how wealthy the insured is. If, on the other hand, the claimant's "net worth" *exceeds* the statutory cut-off, MPCGA would not indemnify the insured, regardless of how poor the insured was. Thus, according to the Road

---

disagree. The road commission's claims under the act arise out of its contract for insurance with Midland that provided indemnification for these third-party claims. Only because of the existence of the contract of insurance does the road commission have a claim under the act.

[8] This is unlike the situation presented in *Rohlman v Hawkeye-Security Ins Co*, n 5 *supra* at 525, n 3, in which we noted that the "policy and the statutes relating thereto must be read and construed together as though the statutes were a part of the contract, for it is to be presumed that the parties contracted with the intention of executing a policy satisfying the statutory requirements, and intended to make the contract to carry out its purpose."

Commission's approach, the determination of whether or not to indemnify the insured is unrelated to the insured's financial ability or inability to pay the claim. The impact of that framework does not stop there. Rather, once MPCGA has refused to indemnify a poor insured who is faced with the claim of a wealthy third-party claimant, there is nothing in the MPCGA Act that would preclude the wealthy third-party claimant from pursuing its claim directly against the poor insured. And, the poor insured could end up paying the claim of the wealthy third-party claimant. [Emphasis in original.]

The MPCGA's analysis is based on the application of the net-worth exclusion to third parties *only*. The Court of Appeals implied that the net-worth exclusion should be applied to *both* the insured and to third-party claimants.[9] However, the same problem articulated by the MPCGA arises—an insured whose net worth does not exceed the statutory limit would not be protected under the act if the third-party claimant's net worth exceeds the statutory limit. The "poor" insured still has to pay the "wealthy" claimant directly. The bottom line issue is not whether the third-party gets paid, but who pays, the insured or the MPCGA? The answer is dependent on the ability of the insured to absorb the loss, as determined by application of the net-worth exclusion.

The general purpose of the act is to protect insureds and third-party claimants who have a right to rely on the existence of insurance. However, the specific purpose of the net-worth exclusion is to

---

[9] The Court of Appeals held "the net-worth exclusion applies to the insured and to the insured's third-party claimants who reside in Michigan." 217 Mich App 159. It then stated that it "express[ed] no opinion regarding the circumstance where an insured's net worth does not exceed the statutory limit, but a third-party claimant's does." *Id.* at 160, n 2.

exclude *insureds* from the protection of the act who are able to absorb the loss.[10] A third-party claimant does not go unprotected when the *insured* is deemed able to absorb the loss because the third-party claimant recovers directly from the insured. Moreover, if the purpose of the net-worth exclusion is to allocate the loss to the party best able to absorb the loss, it should not be applied to the third-party claimant because the third-party claimant is not one of the parties who might have to absorb the loss. As discussed above, the third-party claimant is not precluded from recovering against the insured directly. The allocation occurs between the MPCGA and the insured. Application of the net-worth exclusion to third-party claimants would defeat the specific purpose of the net-worth exclusion. Accordingly, the road commission's interpretation would contravene the policy underlying the act and the purpose of the net-worth exclusion.

By its terms, the net-worth exclusion applies only to insureds. This conclusion is based on the plain language of the statute, the contractual obligations of the insolvent insurer as written in the insurance policy, and a common-sense application of the statutory language, bearing in mind the policy underlying the act and the purpose of this specific provision.

IV

Now we must determine whether the state is a person within the meaning of the act.[11] We again touch

---

[10] See *Borman's, Inc v MPCGA*, 952 F2d 160, 162 (CA 6, 1991), and 218 Mich App 346.

[11] This issue applies only in *Attorney General v MPCGA*. The trial court in *Oakland Co Rd Comm'rs* did find, in its opinion and order, that the road commission fell within the broad definition of person, which

on our rules of statutory construction. Where a statute does not define a term, we will construe it in accordance with its ordinary and generally accepted meaning. *Shallal, supra* at 611; *Western Michigan, supra* at 539. A court may consult dictionary definitions when terms are not expressly defined by a statute. *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997). Again, the statute provides that the definition of person under the Insurance Code includes

> an individual, insurer, company, association, organization, Lloyds, society, reciprocal or inter-insurance exchange, partnership, syndicate, business trust, corporation, and *any other legal entity.* [MCL 500.114; MSA 24.1114 (emphasis added).]

However, the statute does not define the term "legal entity." Black's Law Dictionary (6th ed) defines legal entity as

> Legal existence. An entity, other than a natural person, who has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations.

Surely the state has such a legal existence. The state, which undoubtedly functions in the legal capacity described in the definition of legal entity, comes within the ordinary and generally accepted meaning of legal entity. Thus, the state falls within the definition of person provided by the Legislature in the act.

However, the state argues that unless it is clear that the Legislature intends a law to apply to the

---

includes "any other legal entity"; however, this specific issue was not raised on appeal.

state, it does not. *Mead v Public Service Comm*, 303 Mich 168; 5 NW2d 740 (1942); *Detroit v O'Connor*, 302 Mich 531; 5 NW2d 453 (1942); *Miller v Manistee Co Bd of Rd Comm'rs*, 297 Mich 487; 298 NW 105 (1941), overruled in part by *Mead, supra; Marquette Co v Northern Michigan Univ Bd of Control*, 111 Mich App 521; 314 NW2d 678 (1981). The MPCGA responds that these decisions deal with legislation that imposed burdens on the government, not legislation that conferred a benefit on the government, as in this case. Moreover, the MPCGA asserts that, in each of the above cases, application of the statutes either would have resulted in an unconstitutional infringement on sovereign immunity or would have conflicted with rights conferred on the state or a specific state agency by other legislation dealing with the same subject matter.

An examination of these decisions reveals that the MPCGA is correct. In *O'Connor*, the issue was whether provisions of the judicature act for setting aside a default judgment in certain equitable actions, including qualified mortgage foreclosure proceedings, applied to tax foreclosure proceedings brought in accordance with the city of Detroit's charter provisions. *O'Connor, supra* at 535. We held that the city of Detroit, an agent of the state, did not come within the statute's purview unless the Legislature clearly so indicated. *Id.* at 536.

In *O'Connor*, we relied on *Miller*, which included an extensive discussion of this rule and its origins. This doctrine applies to statutes where prerogatives, rights, titles, or interests of the state would be diminished or to statutes that would impose liability on the state. Where a statute divests a right, title, or interest

of the state, the state must be expressly included in order to be subject to the statute. However, where an act is for the public good, the state shall be bound even though not named expressly therein. *Id.* at 490.

The act at issue here does not divest any right or interest of the state. Indeed, it grants a benefit in some circumstances and does not grant this benefit in others, such as when the net-worth exclusion is applicable. However, this is not the same as imposing liability on the state. The state's liability arises under the supervisor of wells act. Absent the MPCGA act, the state, as an insured, would always be forced to absorb this type of loss. For the Legislature to outline the circumstances under which an insured may receive protection from the act is entirely different from imposing liability on the state.

Next, in *Mead,* we overruled *Miller's* holding that the Legislature intended, without expressly including the state or its agencies, to deprive the state of immunity from liability incident to the negligent use of automobiles. *Id.* at 172. We held:

> The doctrine of sovereign immunity has long been firmly established in the common law of this State, and it may not be held to have been waived or abrogated except that result has been accomplished by an express statutory enactment or by necessary inference from a statute. [*Id.* at 173; see also *McNair v State Hwy Dep't,* 305 Mich 181, 187; 1 NW2d 52 (1943), and *Greenfield Construction Co v Dep't of State Hwys,* 402 Mich 172, 193; 261 NW2d 718 (1978).]

Sovereign immunity is not implicated in this case. As we stated above, this act is not imposing liability on the state.

Finally, in *Dearden v Detroit,* 403 Mich 257, 265; 269 NW2d 139 (1978), we held that where the Legislature granted exclusive jurisdiction over penal institutions to the Department of Corrections, an agency of the state, it was not subject to a local zoning ordinance.[12] This issue was framed in terms of whether a governmental unit was *immune* from a local zoning ordinance. *Id.* at 264. We have no conflict of regulatory authority in this case. The act is not interfering with any exclusive grant of authority to the state or one of its agencies. Thus, no reason exists to exclude the state from the act's definition of person, into which it clearly falls.

V

Next, the road commission argues that the networth exclusion violates the Equal Protection Clauses of the federal and state constitutions. The Court of Appeals, in its amended opinion, held that the road commission,

> as a governmental entity created by the Legislature, "has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." [217 Mich App 162, quoting *Berrien Co v Michigan,* 136 Mich App 772, 778; 357 NW2d 764 (1984) and *Williams v Mayor and City Council of Baltimore,* 289 US 36, 40; 53 S Ct 431; 77 L Ed 1015 (1933).][13]

---

[12] The same reasoning was applied by the Court of Appeals in *Marquette Co,* in which it held that the Legislature did not intend the State Construction Code Act to apply to an agency of the state where the Legislature provided state universities with exclusive jurisdiction over construction of campus buildings. *Id.* at 526.

[13] The basis for this doctrine is that public and municipal corporations are merely "parts of the machinery employed in carrying on the affairs of state" and may be changed, modified, or repealed at the will of the Legis-

Although not mentioned by the Court of Appeals in this case, the line of cases on which the lower courts relied found

> no reason why a local governmental unit's assertion of equal protection and due process rights under our state constitution should lead to a different result. [*DeWitt Twp v Clinton Co*, 113 Mich App 709, 717; 319 NW2d 2 (1982); *Berrien Co, supra* at 778.]

We agree. In *Doe v Dep't of Social Services*, 439 Mich 650, 672; 487 NW2d 166 (1992),  we stated:

> [W]e do not find in the wording used, nor in its arrangement, any evidence of purpose on the part of the drafters to provide broader protection in the Equal Protection Clause of the state constitution than is found in its federal counterpart. Rather, the pattern suggests a deliberate effort to duplicate the protection secured by the federal clause.

We also agree with the Court of Appeals that, as a creation of the Legislature, the road commission cannot assert an equal protection challenge against its creator, the state. The county road law provides for the creation of a county road commission and defines the powers and duties of the commission. See MCL 224.1 *et seq.*;  MSA 9.101 *et seq.*  A county road commission "draws its legal life from the county road law and, as a creature of that legislation, the commission has no power save that which is legislatively conferred." *Arrowhead Development Co v Livingston Co Rd Comm*, 413 Mich 505, 512; 322 NW2d 702 (1982).[14]

---

lature. *Worchester v Worchester C S R Co*, 196 US 539, 550; 25 S Ct 327; 49 L Ed 591 (1905).

[14] The Legislature is granted the authority to create the county road law and the road commission pursuant to Const 1963, art 7, § 16.

As noted by the Court of Appeals, the United States Supreme Court has held that a

> municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator. [*Williams, supra* at 40.]

A board of county road commissioners is not a municipal corporation;[15] however, it is a "body corporate" that "shall act as an administrative board only" and whose function "shall be limited to the formation of policy and the performance of official duties imposed by law . . . ." MCL 224.9(1), (2);    MSA 9.109(1), (2). Like a municipal corporation, the road commission's existence is entirely dependent on the legislation that created it, and the Legislature that may also destroy it.

The present situation is analogous to our decision in *Lansing School Dist v State Bd of Ed*, 367 Mich 591, 599; 116 NW2d 866 (1962), where we rejected an equal protection challenge because, in order to sustain the challenge, it was necessary for the school district to have an "absolute right to vote on the annexation question." Not being entitled to such a right, that it was given to one district and not another did not violate equal protection. *Id.* at 599-600. Moreover, the school district was an agency of the state government and therefore was not in a position to "attempt to attack its parent." *Id.* at 600. Likewise, because the road commission's claim is not based on any absolute

---

[15] The Attorney General has expressed the opinion that a county road commission is a public entity, but not a form of local government or a political subdivision of the state. See OAG, 1977-1978, No 5375, p 663 (October 18, 1978).

right and because it is a creature of the Legislature, it, too, is in no position to "attack its parent."

Finally, we find persuasive the observation that no equal protection violation existed where school districts were not seeking to enforce rights conferred upon them, but merely sought to "overturn the legislative scheme of financing and to thus compel the Legislature to enact a different system that would conform to plaintiffs' theories of equality." *East Jackson Public Schools v Michigan*, 133 Mich App 132, 138; 348 NW2d 303 (1984). That is precisely what the road commission seeks to do here, that is, to overturn the legislative scheme regarding covered claim exclusions on the basis of its theory that public and private entities are not similarly situated. This is precisely what it may not seek to do. Thus, we hold that the road commission, a public entity whose existence is solely dependent upon the legislation that created it, and whose claim is not based on any absolute right, cannot assert an equal protection claim.

VI

Finally, we must decide whether the net-worth exclusion applies to public and governmental entities and, if it does, whether summary disposition was properly granted, pursuant to MCR 2.116(C)(8), (10), for the MPCGA in both cases. Issues of statutory interpretation are questions of law and are therefore reviewed de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991); *Watson v Bureau of State Lottery*, 224 Mich App 639, 644; 569 NW2d 878 (1997). Both panels of the Court of Appeals held that the plaintiffs failed to meet their evidentiary burden

under which they must set forth specific facts to show the existence of a genuine issue of material fact for trial pursuant to MCR 2.116(G)(4). 218 Mich App 348; 217 Mich App 161; *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). Because no genuine issue of material fact existed regarding the net worth of either the road commission or the state, and because the MPCGA was therefore entitled to judgment as a matter of law, summary disposition was properly granted pursuant to MCR 2.116(C)(10). 218 Mich App 348; 217 Mich App 161; *Bourne v Farmers Ins Exchange,* 449 Mich 193, 197; 534 NW2d 491 (1995).

We concluded above that the net-worth exclusion applies to the insured and that the state[16] is a person within the meaning of the statute. Both the state and the road commission are insureds[17] and persons and, thus, are subject to the net-worth exclusion. However, both the state and the road commission argue that the term net worth is not applicable to public or governmental entities, is not used in governmental

---

[16] The road commission is also a person within the meaning of the statute; however, we simply rely on the trial court's determination of that issue, since it was not raised on appeal.

[17] The issue whether the insured or the third-party claimant is subject to the net-worth exclusion is not presented in *Attorney General v MPCGA.* The obligee (DNR) is the insured, not a third-party claimant. In the surety situation, the principal (oil well owners/operators) owes the primary obligation to the obligee, and the surety (Midland) owes a secondary obligation to the obligee. *Great American Ins Co v North Austin Municipal Utility,* 908 SW2d 415 (Tex, 1995). A special relationship exists between a commercial surety and an obligee that is nearly identical to that involving an insurer and an insured. When an obligee requests that a principal obtain a commercial surety bond to guarantee the principal's performance, the obligee is essentially insuring itself from the potential losses that would result in the event that the principal defaults on its original obligation. *Transamerica Premier Ins Co v Brighton School Dist,* 940 P2d 348, 352 (Colo, 1997). Thus, the obligation owed that is discussed in *Oakland Co Rd Comm'rs* is the secondary obligation owed by the surety to the obligee.

accounting, and it is not "appropriate" to apply such a term to public or governmental entities.

Our analysis of this issue begins with an examination of the relevant statutory language:

> [C]overed claims shall not include obligations to an insurer, insurance pool, underwriting association, or to a person who has a *net worth* greater than 1/10 of 1% of the aggregate premiums written by member insurers in this state in the preceding calendar year. [MCL 500.7925(3); MSA 24.17925(3) (emphasis added).]

Utilizing the rules of statutory interpretation discussed above, we observe that "net worth" is not defined by the statute. In ascertaining its ordinary and generally accepted meaning, we examine Black's Law Dictionary (6th ed), p 1041, which defines net worth as, inter alia, the "amount by which assets exceed liabilities" and the "[r]emainder after deduction of liabilities from assets." The MPCGA's expert also offered a definition of net worth from Kohler's Dictionary of Accountants, explaining that the net worth of any entity is the recorded assets minus the recorded liabilities.

Having determined that the net-worth exclusion must be applied to the road commission and the state as persons and insureds, the issue then becomes whether it is *possible* to apply the term net worth to these entities. Clearly, this term has an ordinary and generally accepted meaning that *can* be applied to any legal entity, public, private, governmental, or otherwise. The road commission and the state are essentially arguing that the Legislature made an unwise decision by providing for the application of this term to public and governmental entities. Regard-

less of this, we must give due deference to acts of the Legislature, and we will not inquire into the wisdom of its legislation. *Council of Organizations & Others for Education About Parochiaid v Governor*, 455 Mich 557, 564, n 7; 566 NW2d 208 (1997); *Nummer v Treasury Dep't*, 448 Mich 534, 553, n 22; 533 NW2d 250 (1995). Moreover, arguments that a statute is "unwise or results in bad policy should be addressed to the Legislature." *People v Kirby*, 440 Mich 485, 493-494; 487 NW2d 404 (1992).

In both cases, the MPCGA offered its calculations regarding the state's and the road commission's net worth on the basis of their respective financial statements. In support of its opposition to the MPCGA's motion for summary disposition, the road commission submitted an amicus curiae brief of the Michigan Municipal League, the work sheet generated by the MPCGA in determining whether the road commission's claim was a covered claim, and the road commission's balance account sheet. The state submitted the affidavit of Susan Work Martin, Ph.D., CPA, who stated: The concept of net worth was foreign to the field of governmental accounting; it is not an appropriate measurement for a government entity; and it is not a defined term in the generally accepted accounting principles for government entities.

However, it is not seriously disputed that the term net worth, as it is generally understood, *can* be applied to public and governmental entities. Whether it *should* be so applied is not for us to decide. On the basis of an examination of the materials submitted opposing the MPCGA's motions for summary disposition, neither the road commission nor the state submitted any calculations to refute those made by the

MPCGA or any evidence to dispute the accuracy of those calculations. Thus, no genuine issue of material fact exists regarding the issue of the road commission's and the state's net worth. We agree with the panels of the Court of Appeals that summary disposition was properly granted for the MPCGA in both cases.

VII

In conclusion, we hold that the net-worth exclusion is applicable to the insured and that the state is a person within the meaning of the MPCGA act. We further hold that the road commission may not assert an equal protection claim against its creator, the state. Finally, we conclude that the net-worth exclusion is applicable to both public and governmental entities. Thus, we affirm both decisions of the Court of Appeals.

MALLETT, C.J., and CAVANAGH, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred with BRICKLEY, J.